REDDINGTON, by GERALD J. BLOCH, his Guardian *ad litem*, and another, Plaintiffs-Appellants, v. BEEF-EATERS TABLES, INC., Defendant-Respondent: WALDNER and another, Defendant.*

*No. 554 (1974). Argued February 2, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 363.)

* Motion to intervene or modify granted June 30, 1976 (see post, page 125b).

120

For the appellants there was a brief by *Gerald J. Bloch* and *Phillips, Hoffman & Bloch* of Milwaukee, and oral argument by *Gerald J. Bloch.*

For the respondent there was a brief by *Frank T. Crivello* and *Ames, Riordan, Crivello & Sullivan,* attorneys, and *Brian J. Henderson,* of counsel, all of Milwaukee, and oral argument by *Frank T. Crivello.*

For the respondent there was a brief and supplemental brief in opposition to motion to amend and vacate part of April 7, 1976, decision and mandate filed by *Frank T. Crivello, Brian J. Henderson* and *Riordan, Crivello, Sullivan & Carlson,* all of Milwaukee.

For defendants-interveners, Edmund Waldner and Sentry Insurance Company, there was a brief and supplemental brief in support of motion to amend and vacate part of April 7, 1976, decision and mandate filed by *L. William Staudenmaier* and *Cook & Franke, S. C.,* all of Milwaukee.

HEFFERNAN, J. This case poses the initial question of whether the trial judge erred when he held, as a matter of law, that the plaintiff, Robert Reddington, was a trespasser and, hence, the cause of action founded upon the safe place statute was inapplicable, since it applies only to frequenters. In accordance with that holding, he granted a nonsuit in respect to the Beefeaters Tables, Inc. We conclude, contrary to the finding of the trial judge, that the evidence was sufficient to hold as a matter of law that the plaintiff, Robert, was at least a frequenter, because he was on the property pursuant to the implied

invitation of the Beefeaters Tables, Inc. We reverse and order a new trial on all issues.

The record shows that Robert Reddington, an eleven-year-old boy, went visiting at the Leilani Motel with his mother and brothers on July 23, 1970.

At approximately 3:00 p.m., Robert left the pool area behind the motel to look at the rock garden on the property of the adjacent Leilani Restaurant owned by Beefeaters. He testified that he was interested in the area and was attracted by seeing the rock formations, the large Tiki god, colored lights, and bridge. He stated that he had previously seen the various artifacts while passing by the restaurant on the Bluemound Road.

Robert looked at the rock garden, the lights, and the statuary. That interested him for several minutes, and then he skipped down the steps to return to the motel. The foilage and the large Tiki god obscured his vision to the left, and he was unable to see, and did not hear, the car driven by Edmund Waldner approach from Robert's left on the driveway that separated the Leilani Restaurant from the Leilani Motel.

Waldner's view was also blocked, and he did not see Robert Reddington prior to the accident. Just as Robert stepped into the driveway, he was hit and sustained severe and painful permanent injuries.

There was evidence that the restaurant was not open for dining service at the time of the accident. It is equally clear that there were no signs warning passersby to stay off the premises at other than customer-serving hours. The evidence was undisputed that the premises were landscaped in such a fashion as to excite curiosity and invite further inspection. Moreover, the motel and the restaurant had the same name, Leilani.

All of this evidence mandates the conclusion that Robert was on the premises at the implied invitation of the restaurant proprietors.

The restaurant was a public building, and its continued operation was dependent upon attracting customers to

the premises. While the ticky-tacky Tiki god may have been of no interest to an archaeologist or art lover, the statuary, the rock formations, the colored lights, the bridge, and the water could have no purpose but to attract the public to the premises to inspect the garden and, it was hoped, to dine at the restaurant. The photographic exhibits demonstrate that the Tiki god was on the motel side of the restaurant. Clearly a part of its focus was to attract lodgers from the motel to the restaurant premises. The restaurant and motel bore the same name and appeared to be a part of the same operation. Certainly, we should not expect the average person to "pierce the corporate veil" to determine in advance that the operations were legally distinct. Every indicia apparent to the ordinary observer commands the conclusion that these businesses were one and would lead to the reasonable conclusion that any person lawfully at the motel was free to walk about and examine the grounds of the restaurant.

The assertion by Beefeaters that an implied invitation was extended only during the hours the restaurant was operating is without support and must be rejected. The "attractive" allure of the premises that invited inspection existed at all times. If a partial withdrawal of the implied invitation to come on the premises was intended, it was the duty of Beefeaters to give notice of the times at which the premises were not open for inspection. It is undisputed that no warning was ever given by sign or otherwise.

These circumstances lead to the legal conclusion that Robert Reddington was not a trespasser and that a nonsuit in respect to the safe place cause of action against Beefeaters should not have been granted.

"... a motion for nonsuit is equivalent to a motion for directed verdict. The court may grant neither unless it finds, as a matter of law, that no jury could disagree on the proper facts or the inferences to be drawn therefrom; and that there is no credible evidence to support a verdict for the plaintiff." *Household Utilities, Inc. v.*

*Andrews Co., Inc.* (1976), 71 Wis. 2d 17, 24, 236 N. W. 2d 663.

A trespasser is one who enters another's premises without an express or implied invitation from the other person, and solely for his own pleasure, advantage, or purpose. Wis J I—Civil, Part II, 8012. A trespasser is " 'a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise.' " *Antoniewicz v. Reszczynski* (1975), 70 Wis. 2d 836, 843, 236 N. W. 2d 1, as defined in Restatement, 2d, *Torts*, p. 171, sec. 329.

A licensee, on the other hand, is defined as a person who has a privilege to enter upon land arising from the permission or consent, express or implied, of the possessor of land but who goes on the land for his own purpose rather than for any purpose or interest of the possessor. *Copeland v. Larson* (1970), 46 Wis. 2d 337, 341, 174 N. W. 2d 745; *Voeltzke v. Kenosha Memorial Hospital, Inc.* (1969), 45 Wis. 2d 271, 283, 172 N. W. 2d 673.

In order to be a licensee, it must be determined that:

" '. . . the plaintiff was upon the premises of the defendant with the latter's permission or consent, either express or implied. . . . An implied consent or implied permission is equivalent to an implied invitation and is one given by an owner or occupant when a custom acquiesced in by him is, or when his acts or conduct are, such as would warrant a reasonable man, having knowledge thereof, in believing that the owner had given his consent or permission to another to come upon the premises.' " *Terpstra v. Soiltest, Inc.* (1974), 63 Wis. 2d 585, 589, 218 N. W. 2d 129.

While in this case there was no express permission or consent given by Beefeaters to Robert Reddington to come upon its premises, the question is whether there was any implied permission to do so.

"One cannot . . . be a trespasser while he is in a place to which he personally or the public generally is invited, expressly or by implication." *Grossenbach v. Devonshire Realty Co.* (1935), 218 Wis. 633, 637, 261 N. W. 742.

The facts recited above demonstrate that Robert Reddington came on the premises of the Leilani Restaurant at the implied invitation of the management. Under the applicable law, we conclude that the trial judge committed an error of law when he held there was no evidence to support an impliedly consensual entry on the premises and instead held that Robert Reddington was a trespasser. The judgment granting a nonsuit must be reversed.

The plaintiffs herein properly preserved their record, under *Terpstra v. Soiltest, supra,* to raise the question of whether a duty of ordinary care is owed to one in the status of trespasser. Since *Terpstra,* in *Antoniewicz v. Reszczynski, supra,* this court has abolished the distinction at common law that existed between the status of licensee and invitee. We declined in *Antoniewicz* to speculate upon the abolition of the distinction in respect to trespassers and retained that distinction, at least under the facts of *Antoniewicz,* where the plaintiff was not a trespasser. As in that case, it is apparent here, that Robert Reddington was not a trespasser; and we decline to explore the ramifications of that status here.

Our refusal to consider here the abolition of the separate rules applicable to trespassers does not adversely affect the cause of action asserted by the plaintiffs, for the standard to which Beefeaters must conform is that provided in the safe place statute, a standard higher than that required for common-law negligence.

Because Beefeaters was erroneously dismissed from the case, the subsequent verdict, which found no negligence on either Robert Reddington or the driver, Waldner, must be set aside as void *ab initio.*

Although no appeal was taken from the Reddington-Waldner judgment, it is a nullity, for the action was premised upon a patent error of law that deprived the plaintiffs of the right to try their lawsuit and deprived Waldner of any attempt to seek contribution from Beefeaters, or vice versa. Where this court finds that a clear-

ly void judgment affects the rights of parties properly before us, it is within our power to so state and hold such judgment void *ab initio*.

We have frequently stated that, in an action for negligence, the jury must be given the opportunity to consider the possible negligence of all persons, whether parties or not, who might have contributed to the total negligence. *Connar v. West Shore Equipment of Milwaukee, Inc.* (1975), 68 Wis. 2d 42, 227 N. W. 2d 660. In the instant case, as far as the present record reveals, Beefeaters was available and was a necessary party to the entire lawsuit and should not have been dismissed. Under the facts and law, Beefeaters, had it been joined, might well have been assessed some percentage of causal negligence or could have asserted a claim against Waldner.

We also conclude that the award of damages was not *res adjudicata*. The trial judge stated that the award was inadequate and was to be vacated in the event a new trial was ordered. Since a necessary party was omitted from the action that continued between Robert Reddington and Edwin Reddington and Edmund Waldner, that proceeding was a nullity. A new trial must be ordered on all issues raised by the complaint.

The argument by the respondent in its brief that *Heifetz v. Johnson* (1973), 61 Wis. 2d 111, 211 N. W. 2d 834, is applicable to the case at bar was only considered by the trial judge as supplementary to the judgment dismissing the plaintiffs' complaint against Waldner. Because that judgment is a nullity, we decline to consider here the retroactivity of *Heifetz* as applied to this case[1] and leave the resolution of that question to the trial court in the event it is again raised.

*By the Court.*—Judgment reversed, and judgment dismissing complaint of Robert Reddington and Edwin Reddington against Edmund Waldner and Sentry Insurance

---

[1] *See: Kochel v. Hartford Accident & Indemnity Co.* (1975), 66 Wis. 2d 405, 421, 225 N. W. 2d 604.

Company is vacated as void; and cause remanded for a new trial on all issues.

The following opinion was filed June 30, 1976.

PER CURIAM. (On motion to intervene and modify.) Following the announcement of the court's decision in this case a petition was filed on behalf of Edmund Waldner and Sentry Insurance Company, his liability insurer, seeking permission to intervene in this appeal. Permission to intervene was granted for the limited purpose of presenting arguments on the petitioners' motion to vacate or modify that part of the court's decision which held the judgment dismissing the plaintiffs' complaint against them void *ab initio*. Upon a review of those arguments we have determined that the judgment in question should not have been vacated.

It is well settled in this state that the appellate jurisdiction of this court is dependent upon the rules of appealability established by the legislature. This court is without authority to review the judgment of a lower court unless it has obtained both jurisdiction over the subject matter and jurisdiction over the parties to that judgment. *See: Walford v. Bartsch* (1974), 65 Wis. 2d 254, 260, 222 N. W. 2d 633. In its decision in this case the court noted that no appeal had been taken from the judgment dismissing the plaintiffs' claim against the petitioners. Nor were the petitioners parties to the appeal. We conclude, accordingly, that the court did not acquire the requisite personal jurisdiction and the judgment was therefore not before the court.

The remaining issue raised by the petitioners' motion concerns the res judicata effect of the judgment dismissing the plaintiffs' claim against them. That judgment was entered pursuant to a jury verdict finding no causal negligence on the part of either Robert Reddington or Edmund Waldner. It is a final judgment from which there has been no appeal and it is clearly binding on the issue of the petitioners' liability to the plaintiffs.

*See: Laundry v. Schott* (1972), 54 Wis. 2d 723, 196 N. W. 2d 692. The plaintiffs appear content to be bound by the judgment and do not seek to uphold the court's decision which would, in effect, give them a second opportunity to prove the petitioners' liability. The real issue is whether the judgment absolving the petitioners of liability to the plaintiffs should be res judicata for the purpose of negating their liability to Beefeaters on its contingent claim for contribution. We conclude that it is not.

An essential element of a claim for contribution is common liability to the injured party. *See: Wait v. Pierce* (1926), 191 Wis. 202, 209 N. W. 475, 210 N. W. 822; *Hartford Fire Ins. Co. v. Osborn Plumbing* (1975), 66 Wis. 2d 454, 225 N. W. 2d 628; *Farmers M. A. Ins. Co. v. Milwaukee A. Ins. Co.* (1959), 8 Wis. 2d 512, 99 N. W. 2d 746. However, the cause of action for contribution is separate and distinct from the underlying claim by the injured party. The common liability necessary to support the cause of action for contribution is to be determined as of the time the accident occurs and not as of the time the claim for contribution is asserted. *See: State Farm Mut. Automobile Ins. Co. v. Schara* (1972), 56 Wis. 2d 262, 201 N. W. 2d 758; *Hartford Fire Ins. Co. v. Osborn Plumbing, supra; Ainsworth v. Berg* (1948), 253 Wis. 438, 445, 34 N. W. 2d 790, 35 N. W. 2d 911. The fact that an existing common liability to the injured party is subsequently extinguished as to one of the joint tort-feasors is immaterial insofar as the right of the remaining joint tort-feasors to seek contribution from him is concerned.

The general rule is that there is no automatic preclusion of contribution claims by virtue of a judgment exonerating one of several potential joint tort-feasors. This court has recognized that the matter is to be determined by the application of accepted principles of res judicata. In *Gies v. Nissen Corp.* (1973), 57 Wis. 2d 371, 378, 379, 204 N. W. 2d 519, the court stated:

"In determining the criteria for the application of the doctrines of res judicata and collateral estoppel to subsequent actions between codefendants as to their liability *inter se* where in a prior action they were jointly sued for the injury to another person, it is generally held that a prior judgment is not conclusive in the subsequent action unless the codefendants occupied adversary positions in the prior action and actually litigated therein the issue of their liability *inter se* as well as the issue of their liability to the injured party."

This rule compels the conclusion that a defendant who has not had the opportunity to litigate his contribution claim and establish the existence of a common liability should not be precluded from doing so by the fact that the other tort-feasor was successful in defending the injured party's individual and independent claim for damages.

Here, the plaintiffs commenced their action against both the petitioners and Beefeaters. Beefeaters cross-complained against the petitioners for contribution. Had the case proceeded to verdict in this context, both defendants would have been barred from relitigating any contribution claim. However, the case proceeded to verdict with one of the alleged tort-feasors, Beefeaters, erroneously dismissed from the action by the trial court. While the petitioners and Beefeaters were originally aligned as adverse parties in the litigation, Beefeaters did not have an opportunity to fully litigate the issue of the petitioners' common liability. As a result, it should not now be precluded from doing so either by way of a third-party claim asserted in the plaintiffs' new action against them or by way of an independent claim in a subsequent proceeding.

We conclude, accordingly, that in the new trial of the plaintiffs' claim against Beefeaters, Beefeaters may implead the petitioners for contribution purposes. In such an event, the jury will be required to determine whether

each party was causally negligent with respect to the accident and to apportion that negligence as in any comparative negligence case. *See: Connar v. West Shore Equipment* (1975), 68 Wis. 2d 42, 227 N. W. 2d 660. The apportionment of negligence, if any, to the petitioners, of course, will be relevant only to the issue of their liability to Beefeaters on the contribution claim, since their freedom from primary liability to the plaintiffs has been settled by the prior judgment.

Motion to intervene and modify granted.