Stephen LAESCH, John B. Laesch, and Mary E. Laesch, Plaintiffs-Appellants,

v.

L&H INDUSTRIES, LTD., Chicago & Northwestern Transportation Company, Defendants-Respondents,†

AMERICAN HONDA MOTOR COMPANY, INC., Defendant,

UNITED STATES FIDELITY & GUARANTY COMPANY, Defendant-Respondent.

Court of Appeals

*No. 89-2116. Submitted on briefs May 24, 1990.—Decided March 28, 1991.*

(Also reported in 469 N.W.2d 655.)

† Petition to review denied.

889

For the plaintiffs-appellants, the cause was submitted on the briefs of *John L. Cates, Steven J. Schooler* and *Dan D. Gartzke* of *Lawton & Cates, S.C.,* of Madison.

For the defendants-respondents the cause was submitted on the briefs of *Roy H. Nelson* of *Borgelt, Powell, Peterson & Frauen, S.C.* of Milwaukee, and *Bruce A. Schultz* and *William F. Bauer* of *Coyne, Niess, Schultz & Becker* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

DYKMAN, J. Stephen Laesch was injured when he collided with a stack of rails piled along an abandoned railroad right-of-way while riding a Honda all-terrain vehicle (ATV). The right-of-way is owned by Chicago and Northwestern Transportation Company (CNW). Stephen and his parents, John and Mary Laesch (plaintiffs), appeal from judgments dismissing their complaint against CNW, L&H Industries, Ltd. and L&H's insurer, United States Fidelity & Guaranty Company (Fidelity).[1] Because disputed issues of material fact were raised as to whether CNW and L&H owed Laesch a duty of reasonable care, we conclude summary judgment was improper. We therefore reverse and remand for a trial.

---

[1]As a result of a settlement that was reached between plaintiffs and American Honda Motor Company, Inc., plaintiffs voluntarily dismissed Honda as a party.

## I. BACKGROUND

CNW contracted with L&H to remove the railroad rails, ties and other track materials from its railroad line near Waukesha, Wisconsin. In the fall of 1983, L&H began its work. The rails were placed in stacks approximately every half mile along the abandoned right-of-way. On November 28, 1983, Stephen Laesch collided with a stack of rails while riding a Honda ATV along the right-of-way.

## II. STANDARD OF REVIEW

Summary judgment is governed by sec. 802.08, Stats. *Shannon v. Shannon,* 150 Wis. 2d 434, 441, 442 N.W.2d 25, 29 (1989). Summary judgment methodology is well established. *See Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983). Our review is *de novo* and independent of the trial court's decision.[2]

## III. STANDARD OF CARE

Plaintiffs' complaint[3] alleged Laesch's injuries were caused by L&H's negligent removal and placement of the rails, by L&H's grading of the right-of-way and failure to maintain "no trespassing" signs, by CNW's negligent

[2]The trial court adopted as findings of fact portions of the statements of facts of the parties' briefs. Findings of fact are improper under summary judgment methodology. *State Bank of La Crosse v. Elsen,* 128 Wis. 2d 508, 515, 383 N.W.2d 916, 919 (Ct. App. 1986). The trial court decides only if a genuine issue exists as to any material fact. *Id.* at 515–16, 383 N.W.2d at 919; sec. 802.08(2), Stats.

[3]By "complaint," we are referring to plaintiffs' second amended complaint.

supervision and inspection of L&H's work, and by CNW's failure to take measures which would have deterred Laesch from traversing the right-of-way. The complaint states a claim.

CNW denied negligence, alleged as an affirmative defense that Laesch's injuries were caused by his own negligence and cross-claimed for contribution against Honda, L&H and Fidelity. L&H denied negligence, alleged Laesch's injuries were caused by his own negligence and that plaintiffs' action was barred by secs. 895.52, Stats.,[4] and 29.68, Stats. (1981–82).[5] These answers plead defenses and raise material issues of fact.

CNW and L&H moved for summary judgment.[6] We examine the affidavits and other proof of defendants supporting their motion to determine whether they have established a *prima facie* case for summary judgment. *Grams v. Boss,* 97 Wis. 2d 332, 338, 294 N.W.2d 473, 476–77 (1980). To make a *prima facie* case for summary judgment, CNW and L&H must each show a defense that would defeat the plaintiffs' claim. *Id.* at 338, 294 N.W.2d at 477.

CNW supports its motion for summary judgment with an affidavit incorporating excerpts of depositional testimony and photos of the accident site. L&H, in support of its motion, relies entirely upon the materials submitted by CNW.

The photos of the accident site reveal that the rails were stacked parallel with the right-of-way beginning at

[4]Section 895.52, Stats., became effective May 15, 1984, and is inapplicable to this case. *See* 1983 Wis. Act 418 (repealing sec. 29.68, Stats. (1981–82), and enacting sec. 895.52).

[5]L&H and Fidelity also cross-claimed against Honda.

[6]CNW separately and L&H and Fidelity jointly moved for summary judgment.

about the point where the railroad ties ended when the track was in use. The rails were not concealed by the grade of the roadbed or by brush. The president of L&H stated that the rails were positioned so that a truck could later drive down the middle of the right-of-way to pick up the rails.

Laesch testified at a deposition that, prior to the accident, he had driven past the stacks of rails on the right-of-way on several occasions during both day and night. He stated that, although traveling at night, he felt comfortable at the time of the accident traveling down the roadbed and believed he could stop in sufficient time if he observed an obstruction.

CNW and L&H contend they have made a *prima facie* case because the testimony establishes that Laesch was a trespasser. As such, they contend plaintiffs must show that CNW and L&H willfully and intentionally injured Laesch. *See Anderson v. Green Bay & Western R.R.,* 99 Wis. 2d 514, 518-19, 299 N.W.2d 615, 618 (Ct. App. 1980). We conclude CNW and L&H have made a *prima facie* defense to plaintiffs' complaint against them.

We next examine plaintiffs' submissions to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the plaintiffs to a trial. *Grams,* 97 Wis. 2d at 338, 294 N.W.2d at 477. Plaintiffs rely on the deposition testimony of three employees of CNW and the president of L&H. Each stated that they were aware that abandoned right-of-ways were used for recreational purposes. In addition, plaintiffs rely on the testimony of two homeowners, Merlin Lange and Susan Meidl, who lived near the accident site. Lange stated that he had observed individuals on the right-of-way "hundreds" of times.

Meidl stated that she saw people using the right-of-way the entire summer preceding the accident.

Plaintiffs contend this testimony establishes that users of the right-of-way were not mere trespassers but, rather, "frequent trespassers." As a result, CNW and L& H owed users of the right-of-way a duty of reasonable care and are liable for failing to exercise such care. This question requires the application of the law of negligence to the facts.

## A. FREQUENT TRESPASSERS

The "frequent trespasser" doctrine provides that owners or occupiers of land who conduct activities which are highly dangerous to trespassers they know or should know are constantly intruding upon a limited area may be liable for failing to exercise reasonable care in the conduct of such activities. *See Brophy v. Milwaukee Elec. Ry. & Transp. Co.,* 251 Wis. 558, 563–64, 30 N.W.2d 76, 79 (1947).[7] Section 334 of the *Restatement (Second) of Torts* (1965) states:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area thereof, is subject to liability for bodily harm there caused to them by

---

[7]Some older Wisconsin cases reach the same result by finding pedestrians to be *licensees by implication* where it was established that "large numbers of persons have for long periods of time traveled along well-defined paths upon the right of way." *Sorenson v. Chicago, Milwaukee & St. Paul Ry. Co.,* 192 Wis. 231, 234, 212 N.W. 273, 274 (1927); *see Brinilson v. Chicago & N.W. Ry. Co.,* 144 Wis. 614, 617–18, 129 N.W. 664, 666 (1911); *Davis v. Chicago & N.W. Ry. Co.,* 58 Wis. 646, 653–54, 17 N.W. 406, 410 (1883). We see no practical difference in this context between an implied licensee and a frequent trespasser.

his failure to carry on an activity involving a risk of death or serious bodily harm with reasonable care for their safety.

The "knowledge" element is explained in comment c to sec. 334, which provides in part:

The words "should know" . . . imply that the person in question is not only required to draw a correct conclusion from facts known to him, but also to ascertain the data necessary for drawing such a conclusion by a reasonable attention to and appreciation of the surrounding circumstances and, where adequate data cannot be thus obtained, by inspection or investigation.

To determine whether use of property is "frequent," courts examine the particular facts of each case.[8]

In *Brophy,* the court cited sec. 334[9] to find that a railroad must exercise reasonable care to protect pedestrians travelling a path along a railroad. The court noted that, although the railroad had posted warning signs, "[a]s long as [the railroad] knew that such notices were

---

[8]*See generally Louisville & N.R. Co. v. Spoonamore's Adm'r,* 129 S.W.2d 175, 176–77 (Ky. 1939) (railroad owed duty of reasonable care to trespassers on well-beaten path past tracks); *Hanson v. Bailey,* 83 N.W.2d 252, 257 (Minn. 1957) ("[t]he term 'limited' is used not in the sense of 'small' or as necessarily referring only to a fractional part of the whole, but rather in the sense of a 'delimited' or clearly defined area"); *Reasoner v. Chicago, Rock Island & Pacific R.R. Co.,* 101 N.W.2d 739, 740–43 (Iowa 1960) (taxi driver injured on railroad property near station denied recovery because there was no evidence of constant public use of that portion of premises).

[9]The court in *Brophy* cited sec. 334 of the *Restatement of Torts. Id.* at 563, 30 N.W.2d at 79. However, the language of that section is identical to sec. 334 of the *Restatement (Second) of Torts.*

generally disregarded and public use was made of the path, the law requires that the company take into account the probable presence of pedestrians and conduct its activities with reasonable regard for their safety." *Id.* at 563, 30 N.W.2d at 79 (citation omitted).[10]

We conclude plaintiffs' affidavits and proofs raise disputed issues of material fact. These include the frequency of use of the abandoned right-of-way, the railroad's knowledge of such use, and the "dangerousness" of leaving stacks of rails close to an abandoned right-of-way. *See Restatement (Second) of Torts* at sec. 334. Thus, summary judgment was improper.[11]

---

[10]In dicta, the court in *Antoniewicz v. Reszczynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975), also acknowledged the "frequent trespasser" exception to the willful and wanton injury standard of care generally afforded trespassers. The court observed:

> A trespasser . . . is not ipso facto an outlaw, unless he is in fact on the premises for illegal purposes. That this is true is demonstrated by the numerous rules stated in Prosser, *Torts* (hornbook series, 4th ed.), which afford some protection under particular circumstances to "frequent trespassers," "anticipated trespassers" in respect to dangerous activities, "discovered trespassers," and "physically trapped" trespassers.

*Id.* at 843, 236 N.W.2d at 4.

[11]CNW maintains that plaintiffs have waived their right to contend that they are "frequent trespassers" by admitting, in plaintiffs' brief in opposition to defendants' motion for partial summary judgment and in open court, that Stephen Laesch was a trespasser. However, plaintiffs nowhere conceded that Laesch was not a frequent trespasser.

The theory of frequent trespass *assumes* that the plaintiff was a trespasser. The precise issue is whether plaintiff was one of a *multitude* of trespassers.

## B. OPEN AND OBVIOUS DANGER

CNW and L&H contend that, even if the "frequent trespasser" exception applies to this case, they are still entitled to summary judgment because, on the undisputed facts, the conditions along the right-of-way presented an open and obvious danger. A landowner's duty of ordinary care is not breached if the dangerous condition is open and obvious. *Treps v. City of Racine,* 73 Wis. 2d 611, 617–18, 243 N.W.2d 520, 523 (1976); *Maci v. State Farm Fire & Casualty Co.,* 105 Wis. 2d 710, 716, 314 N.W.2d 914, 918 (Ct. App. 1981). Section 343A(1) of the *Restatement (Second) of Torts* (1965), cited in *Treps,* states: "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Comment b to sec. 343A states, in part, that " '[o]bvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment."

The open and obvious defense applies whenever a plaintiff voluntarily confronts an open and obvious condition and a reasonable person in the position of the plaintiff would recognize the condition and the risk it presents. *Griebler v. Doughboy Recreational, Inc.,* 160 Wis. 2d 547, 551, 466 N.W.2d 897, 898 (1991). The danger in this case was not the result of a single obvious condition, *see, e.g., Id.* at 552, 466 N.W.2d at 899 (water in pool of unknown depth), but, rather, of a combination of conditions. These include the roadbed, the pile of sharp rails, an unsteady vehicle and the speed of the

vehicle. Generally, whether a condition is an open and obvious danger is a question of fact. *Id.* at 559, 466 N.W.2d at 902. Because the facts with respect to a number of these conditions are in dispute,[12] we conclude that summary judgment should be denied.

## C. SECTION 29.68, STATS. (1981–82)

CNW and L&H contend they are not liable as a result of the partial immunity afforded by sec. 29.68, Stats. (1981–82), the recreational use statute in effect at the time of the accident.[13] Section 29.68 provided in part:

> (1) An owner, lessee or occupant of premises owes no duty to keep the premises safe for entry or use by others for hunting, fishing, trapping, camping,

[12]For example, L&H contends in their brief that "it [was] obvious that the surface [was] bumpy and irregular." However, Laesch stated that the roadbed was well graded and "fairly smooth."

[13]Section 29.68, Stats. (1981–82), was repealed and replaced by sec. 895.52, Stats. *See* 1983 Wis. Act 418. Section 895.52, provides in part:

> (2)(a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:
> 1. A duty to keep the property safe for recreational activities.
> 2. A duty to inspect the property, except as provided under s. 23.115(2).
> 3. A duty to give warning of an unsafe condition, use or activity on the property.

"Recreational activity" is defined as: "any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. 'Recreational activity' includes, but is not limited to . . . *operating an all-terrain vehicle* . . .." Sec. 895.52(1)(g) (emphasis added).

hiking, snowmobiling, berry picking, water sports, sight-seeing, cutting or removing wood, climbing of observation towers or recreational purposes, or to give warning of any unsafe condition or use of or structure or activity on the premises to persons entering for such purpose . . ..

If protected by sec. 29.68, a landowner's liability was limited to cases involving "willful or malicious failure to guard or to warn against a dangerous condition . . .." Sec. 29.68(3)(a).

We do not believe CNW and L&H are protected by sec. 29.68, Stats. (1981–82). The legislative intent of sec. 29.68 was described by the introductory language of ch. 89, Laws of 1963:

An Act to create 29.68 of the statutes, relating to the limitations on liability of landowners who open private lands for recreational purposes.

Because CNW did not "open" its property for recreational use, sec. 29.68 does not apply to the facts of this case. *See Goodson v. City of Racine,* 61 Wis. 2d 554, 558–59, 213 N.W.2d 16, 18–19 (1973); *Christians v. Homestake Enterprises, Ltd.,* 97 Wis. 2d 638, 647, 294 N.W.2d 534, 539 (Ct. App. 1980), *rev'd and remanded on other grounds,* 101 Wis. 2d 25, 303 N.W.2d 608 (1981).[14]

---

[14]In *Christians,* plaintiff was injured in an explosion involving blasting caps stolen by two other boys from property owned by defendants. *Id.* at 640, 294 N.W.2d at 536. Rejecting defendant's argument that it was protected from liability by sec. 29.68, Stats., the court of appeals noted, "Homestake never opened its property for recreational use. Indeed, its property was posted to forbid such use." *Id.* at 647, 294 N.W.2d at 539. Reversing and remanding on other grounds, the supreme court also stated "[w]e

In addition, we conclude riding an ATV along an abandoned right-of-way is not among the types of activities specifically contemplated by sec. 29.68, Stats. (1981–82). The general term "recreational purposes" in sec. 29.68(1) is limited to activities similar to the preceding enumerated words. *Quesenberry v. Milwaukee County,* 106 Wis. 2d 685, 693, 317 N.W.2d 468, 472 (1982). In *Quesenberry,* the court stated:

> We conclude that the common feature of the enumerated words is that they are the type of activity that one associates being done on land in its natural undeveloped state as contrasted to the more structured, landscaped and improved nature of a golf course with its fairways, sand traps, rough and greens created for one purpose: to play the game of golf.

*Id.* We conclude CNW and L&H are not immunized by sec. 29.68.

Because disputed fact issues were raised as to whether CNW and L&H owed Laesch a duty of reasonable care, we conclude summary judgment was improper. We therefore reverse and remand for a trial.[15]

---

do not accept defendant's contention that sec. 29.68, Stats., applies." *Christian,* 101 Wis. 2d at 59 n.20, 303 N.W.2d at 624 n.20.

[15]Because we have determined that there is at least one sufficient ground to deny the motions by CNW and L&H for summary judgment, we do not reach the other issues raised by the parties, including: whether the conduct of CNW and L&H was in willful and utter disregard for Laesch's safety; whether L&H can be held liable in this case even if CNW is immune from liability; whether L&H breached its duty to act with reasonable care in performance of the contract; and, whether the "attractive nuisance" doctrine is applicable to this case. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

*By the Court.*—Judgments reversed and cause remanded.