Matthew VERDOLJAK, Plaintiff-Appellant,†

v.

MOSINEE PAPER CORPORATION, Defendant-Respondent.

Court of Appeals

*No. 94–2549–FT. Submitted on briefs January 30, 1995.—Decided February 21, 1995.*

(Also reported in 531 N.W.2d 341.)

†Petition to review granted.

235

On behalf of plaintiff-appellant, the cause was sub-
mitted on the briefs of *Toby E. Marcovich* and *George*

*L. Glonek* of *Marcovich, Cochrane & Milliken* of Superior.

On behalf of defendant-respondent, the cause was submitted on the brief of *Mark A. Siefert* of *Stilp, Cotton & Wells* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Matthew Verdoljak, injured when he struck a closed gate while motorbiking on a private logging road, appeals a summary judgment dismissing his negligence action against the property owner, Mosinee Paper Corporation (Mosinee).[1] The circuit court dismissed the complaint on grounds that the recreational activities immunity statute § 895.52, STATS., barred the claim.[2] Matthew contends that this

---

[1] This is an expedited appeal under RULE 809.17, STATS.

[2] Section 895.52, STATS., provides in part:

Recreational activities; limitation of property owners' liability.
(1) Definitions. In this section:

. . . .

(d) "Owner" means either of the following:

1. A person, including a governmental body or nonprofit organization, that owns, leases or occupies property.

. . . .

(g) "Recreational activity" means any outdoor activity undertaken for the purpose of exercise, relaxation or pleasure, including practice or instruction in any such activity. "Recreational activity" includes, but is not limited to, hunting, fishing, trapping, camping, picnicking, exploring caves, nature study, bicycling, horseback riding, bird-watching, motorcycling, operating an all-terrain vehicle, ballooning, hang gliding, hiking, tobogganing, sledding, sleigh riding, snowmobiling, skiing, skating, water sports, sight-seeing, rock-climbing, cutting or removing wood, climbing observation towers, animal training, harvesting the products of nature and any other outdoor sport, game or educational activity, but does not include any organized team sport activity sponsored by the owner of the property on which the activity takes place.

statute does not apply because: (1) Mosinee had not opened or permitted the property to be used for motorbiking, and (2) he was not engaged in a recreational activity at the time of the accident. We hold that § 895.52, which declares that it limits liability of "property owners toward others who use their property for recreational activities," plainly includes owners without regard to the owner's permission, and that Matthew was engaged in recreational activity as a matter of law. We therefore affirm the summary judgment dismissing his claim.

Our review of a summary judgment is de novo, that is, without deference to the circuit court's decision. *Brownelli v. McCaughtry*, 182 Wis. 2d 367, 372, 514

. . . .

(2) No duty; immunity from liability. (a) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner owes to any person who enters the owner's property to engage in a recreational activity:

1. A duty to keep the property safe for recreational activities.

2. A duty to inspect the property, except as provided under s. 23.115 (2).

3. A duty to give warning of an unsafe condition, use or activity on the property.

(b) Except as provided in subs. (3) to (6), no owner and no officer, employe or agent of an owner is liable for any injury to, or any injury caused by, a person engaging in a recreational activity on the owner's property or for any injury resulting from an attack by a wild animal.

Section 895.52(6)(c), STATS., provides:

Liability; private property. Subsection (2) does not limit the liability . . . if any of the following conditions exist:

. . . .

(c) The injury is caused by a malicious act of the private property owner or of an employe or agent of a private property owner.

N.W.2d 48, 49 (Ct. App. 1994). We follow the same methodology as the circuit court. *Id.* We first examine the complaint to determine if it states a claim, and then the answer to ascertain whether it creates a material issue of fact. *Id.* If the pleadings establish a material dispute, we then look to the moving party's proofs to determine if a prima facia case for summary judgment has been established. *Id.* If a prima facia case is made, we examine the opposing party's proofs to determine whether those proofs place any material facts in dispute so as to require a trial. *Id.* at 372-73, 514 N.W.2d at 49-50.

Matthew's complaint stated a claim for common law negligence. Mosinee's answer placed the claim in dispute and asserted affirmative defenses, including allegations that Matthew was a trespasser and that the claim is barred by § 895.52, STATS. Mosinee moved for summary judgment and submitted supporting affidavits, incorporating answers to interrogatories along with excerpts from Matthew's sworn pretrial deposition. Matthew submitted excerpts from answers to interrogatories in opposition to the motion.

Mosinee's Forest Manager, Steve Coffin, provided evidence to support the summary judgment motion. These proofs established that Mosinee owned a section of forest land where Matthew's injuries allegedly occurred.[3] The site of the accident, a point along a winding trail that interconnects with other similar trails, was described as a private logging road or trail maintained by Mosinee to allow logging trucks and

---

[3] Mosinee's answers raised an issue concerning an earlier accident report indicating that the accident happened in a township where Mosinee did not own any property. For purposes of resolution of the appellate issues, Mosinee does not dispute that the accident occurred on its property.

equipment access to the company's forest lands during the harvesting season. The gate placed across the road was "constructed of one-half-inch steel rod and hung by chains on a post made out of a steel pipe," and "has been in use for many years . . . to block the pathway of vehicles and individual access to the private property for the protection of the property and the logging equipment that may be on the property." Mosinee characterized the gate as "an open and obvious barricade . . . visible for a substantial distance on both sides of the gate." The gate was sometimes left open and sometimes closed by loggers or employees of Mosinee Paper using the property. It is unknown who closed the gate prior to the accident. The evidence includes photographs depicting the gate and approaches from each direction.

The property was open for hunting and fishing, and Mosinee issued permits to the public to use it to obtain firewood when logging was not in progress. Mosinee described Matthew as a "trespasser," claiming that he was not given permission, either express or implied, to be on the property.[4] There were no "no

---

[4] Coffin asserted that Mosinee held its land open for hunting and fishing pursuant to "Wisconsin Administrative Code Section NR Chapter 46." Chapter NR 46, entitled Forest Tax Program, is enacted pursuant to the provisions of ch. 77, STATS., which gives property tax incentives to owners who meet its requirements.

Section 77.83(2), STATS., provides, with exceptions not relevant here, that the owner of "managed forest land shall permit public access to the land for hunting, fishing, hiking, sightseeing and cross-country skiing."

WISCONSIN ADM. CODE § NR 46.21(3)(b) provides that:

Open areas may be posted in conformance with this section and s. 943.13, Stats., against uses other than hunting, fishing, hiking,

trespassing" signs, no signs designating the property or trails for motorbike use and no warning signs in reference to the gate on the property. Mosinee never observed Matthew using the pathway or trail. Mosinee never saw anybody on the logging trail without express permission.

In answer to an inquiry whether "the defendant [Mosinee] or anyone on its behalf had ever actually observed any person[s] using the pathway or trail," Coffin indicated "Defendant observed logging trucks and other equipment use the road" and stated that Mosinee had observed vehicle tracks "on the property."

Matthew's deposition established that on the day of the accident, July 27, 1992, he made plans to go bike riding "for fun" with several friends, including Scott, Steve and others. In furtherance of his plan, he transported his Honda 125 "dirt bike" by truck to Steve's house. Matthew's bike was not equipped to legally operate on public highways, missing headlights, tail lights, brake lights, horn and speedometer. No one was home at Steve's house. Matthew unloaded his motorbike and drove it alone on Tri-Lakes Road to a sand pit that is "right off" Tri-Lakes Road. After driving around the sand pit "for fun" for about ten minutes, Matthew returned to Tri-Lakes Road, and from there

---

sight-seeing and cross-country skiing as long as the post signs indicate the land is managed forest land and the land is open to the public for hunting, fishing, hiking, sight-seeing and cross-country skiing.

Thus, although these provisions apparently require that at least some of the sections of land be open for recreational purposes in addition to hunting and fishing, it does not require it be held open for motorbiking. Further, there is no suggestion by the parties here that the requirements of this statute are relevant to the liability issue, and we do not consider it further.

241

to the intersection with the logging road in question, described as a dirt or sandy trail through a forest area. Matthew testified that he "then was going to cut across the logging road to either meet Steve and them on the trail or else at Scott's house."

Matthew was asked:

Q. If you had met Steve and Scott on the trail, what were you planning to do?

. . . .

A. Just meet up and ride around.

Q. That was just for fun, right?

A. Yes.

Q. If you met Steve and Scott at Scott's house, what was your plan to do?

A. Same thing.

Q. Essentially same kind of riding you were doing at the sand pit, is that right?

A. Yeah.

At several points in his deposition, Matthew repeated in answer to inquiries that he had agreed to meet his friends either at Scott's house or on the logging trail, and he also stated that he took the logging road because it was a "little shorter than going back down Tri-Lakes Road." While riding that trail and before meeting his friends, Matthew struck the gate.

Although a determination that Matthew was a trespasser would seemingly resolve this case in favor of Mosinee regardless of § 895.52, STATS., we decline to classify Matthew as a trespasser as a matter of law. If Matthew were a trespasser, it would bar his claim regardless of § 895.52 because the landowner only has the duty to refrain from willful and intentional injury

242

to a trespasser. *See Szafranski v. Radetzky*, 31 Wis. 2d 119, 125, 141 N.W.2d 902, 905 (1966).[5]

█

Although Mosinee's answer alleged that he was a trespasser, it did not pursue summary judgment on that grounds, and the parties have neither briefed the issue nor argued it on appeal. "A trespasser is one who enters another's premises without an express or implied invitation from the other person, and solely for his own pleasure, advantage or purpose." *Reddington v. Beefeaters Tables*, 72 Wis. 2d 119, 124, 240 N.W.2d 363, 366, *modified,* 72 Wis. 2d 119, 243 N.W.2d 401 (1976). The owner's invitation, consent or permission may be implied from custom, or when the owner's conduct is such as would warrant a reasonable person having knowledge thereof to believe that the owner had given consent to come upon the premises. *Id.* Mosinee granted permission to the public to enter its land for certain recreational purposes, but posted no notice of

---

[5] There are exceptions to the limited liability toward trespassers. Under the "frequent trespasser" doctrine, if the owner knows or should know that substantial numbers of trespassers are in the habit of entering land at a particular point, as where there is a "beaten path," where the burden on the landowner is slight and the risk of harm to trespassers is great, a duty of reasonable care may arise. W. PROSSER & W. KEETON ON THE LAW OF TORTS § 58, 395-96 (5th ed. 1984).

A related doctrine of "discovered trespassers" also creates a duty of ordinary care, once the person's presence is known, depending on various factors. *Id.* at 396-99. Wisconsin appears to embrace these doctrines. *See Copeland v. Larson*, 46 Wis. 2d 337, 174 N.W.2d 745 (1970), *overruled on other grounds by Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 854-55, 236 N.W.2d 1, 10 (1975). The undisputed evidence in this case demonstrates that neither of these exceptions to the general rule of limited liability is applicable here.

these limits. Perhaps more to the point, the gate at an undisclosed location in the interior of the property left an apparent unrestricted entry to the logging road at an intersection with a public highway. Despite Mosinee's conclusory statement that Matthew was a trespasser, the property was neither posted nor enclosed, and Matthew was never told to keep out. These facts arguably give rise to inferences upon which a finding could be made that Matthew was not a trespasser.

Thus, the question remains whether a fact finder's hearing is necessary to determine if Matthew had implied permission to ride his motorbike on the property, that is whether Mosinee's property was "held open" for that recreational activity. If a fact finder were to determine that Matthew was not a trespasser, Matthew would continue to argue that § 895.52, STATS., requires evidence that the property was held open for the recreational activity of motorbiking. We conclude that the current statute does not require the owner to hold the property open for recreational activities.

Matthew relies upon *Laesch v. L & H Inds., Ltd.*, 161 Wis. 2d 887, 469 N.W.2d 655 (Ct. App. 1991), and other earlier cases in support of his argument that the owner must hold the property open for the recreational activity in question. However, *Laesch* and the cases he cites, save one, are not relevant to the meaning of this statute. Rather, those cases interpreted § 29.68, STATS., since repealed. *See Laesch*, 161 Wis. 2d at 898-900, 469 N.W.2d at 659-60. *Laesch* dealt with the express legislative intent of 29.68 as described by the introductory language to ch. 89, Laws of 1963: "*AN ACT* to create 29.68 of the statutes, *relating* to the limitations on liability of *landowners who open private lands for*

*recreational purposes.* (Emphasis added.) *Laesch*, 161 Wis. 2d at 899, 469 N.W.2d at 660.

Section 29.68, STATS., however, has been repealed. The legislature acted following several decisions of our supreme court narrowly construing the statute because it was in derogation of the common law. *See, e.g., Copeland v. Larson*, 46 Wis. 2d 337, 347, 174 N.W.2d 745, 750 (1970), *overruled on other grounds by Antoniewicz v. Reszczynski*, 70 Wis. 2d 836, 854-55, 236 N.W.2d 1, 10 (1975). The new legislation significantly changed the law, essentially to its present form, by virtue of 1983 Wis. Act 418, creating § 895.52, STATS., effective May 15, 1984. The introductory language explains the intent of the new law:

> *The legislature intends by this act to limit the liability of property owners toward others who use their property for recreational activities* under circumstances in which the owner does not derive more than a minimal pecuniary benefit. While it is not possible to specify in a statute every activity which might constitute a recreational activity, this act provides examples of the kinds of activities that are meant to be included, and the legislature intends that, where substantially similar circumstances or activities exist, *this legislation should be liberally construed in favor of property owners to protect them from liability. The act is intended to overrule any previous Wisconsin Supreme Court decisions interpreting section 29.68 of the statutes if the decision is more restrictive than or inconsistent with the provisions of this act.* (Emphasis added.)

Whether a statute is ambiguous is a question of law. *MPI Wis. Mach. Div. v. DILHR*, 159 Wis. 2d 358, 367, 464 N.W.2d 79, 82 (Ct. App. 1990). This statute is

245

not ambiguous. The express meaning of § 895.52, STATS., is straightforward and plain: It limits "the liability of property owners toward others who use the property for recreational activities"; it does not purport to condition that limit to owners *who open their land* to those who use it for recreational activities.

The broader protection foretold in the statement of legislative intent introducing 1983 Wis. Act 418 is then reflected in the substantive provisions of § 895.52, STATS. In contrast to the former statute, § 895.52 contains no references to "permission" from the owner that were central to the scheme in § 29.68, STATS.[6] Section 29.68 structured liability upon the nature of the owner's permission, and the limits of owner liability was affected by whether users were "licensees" or, in some instances, "invitees." *See* Richard A. Lehmann, Note, *Torts-Statutes-Liability of Landowner to Persons Entering for Recreational Purposes*, 1964 WIS. L. REV. 705.

Matthew, however, does cite a statement in a case that describes the meaning of the current statute. *Bystery v. Sauk City*, 146 Wis. 2d 247, 252, 430 N.W.2d 611, 613 (Ct. App. 1988), states that the declaration of legislative intent in 1983 Wis. Act 418 shows that the purpose of § 895.52, STATS., is the same as that in former § 29.68, STATS., that is, to encourage landowners

---

[6] Section 29.68(2), STATS., 1981-82, provided:

Permission. An owner, lessee or occupant of premises who gives permission to another to hunt, fish, trap, camp, hike, sightsee, berry pick or to proceed with water sports or recreational uses upon such premises does not thereby extend any assurances that the premises are safe for such purpose, or constitute the person to whom permission is granted an invitee to whom a duty of care is owed, or assume responsibility for or incur liability for any injury to person or property caused by any act of persons to whom the permission is granted, except as provided in sub. (3).

who might otherwise hold their land from the use of others to make their land available for recreational activities.

*Bystery* upheld the right of a bicyclist to pursue a negligence action against a municipality after she was injured in a fall caused by a village's alleged failure to properly maintain its public sidewalk, and the court rejected an immunity defense under § 895.52, STATS. At the outset of its discussion, *Bystery* explicitly acknowledged: "Section 895.52, STATS., conflicts with § 81.15, STATS." *Id.* at 251, 430 N.W.2d at 613. The court then recounted that § 81.15, in existence from the time Wisconsin acquired statehood, expressly declared a legislative policy to allow persons to recover damages for an injury caused by want of repairs to a municipal public highway, which includes a sidewalk. *Id.* at 253, 430 N.W.2d at 613. Especially because numerous decisions of our supreme court reaching back to the nineteenth century upheld the imposition of liability under that law, *Bystery* applied a canon of statutory construction to presume that the legislature was aware of this existing statute, § 81.15, when it enacted a later one, § 29.68, STATS., in 1963. *Id.* at 252-53, 430 N.W.2d at 613. Thus, because the legislature knew of and did not repeal the older law, the court construed the legislative intent to continue § 81.15 in effect, and the court declined to treat it as repealed by implication. *Id.*

*Bystery* needed to say no more: Because the legislature meant to preserve liability for negligently maintained public sidewalks from the sweep of the recreational immunity statute, § 81.15, stands as an exception to it. Nevertheless, after declaring that the two statutes were in conflict, and resolving the reach of each, the court then remarked that the two statutes were only in "apparent conflict" and proceeded to har-

247

monize them. *Id.* at 251, 430 N.W.2d at 613. In the process, the court noted that § 29.68 was created "to encourage . . . use of forest and farmlands for . . . recreational sports" and in summary fashion stated that the declared legislative intent of the current statute showed the same purpose. *Id.* at 252, 430 N.W.2d at 613. The court then reached the conclusion: A public sidewalk remains subject to the provisions of § 81.15 until it is withdrawn from transportation uses and the municipality *"has devoted the highway or sidewalk to recreational activities . . . ." Id.* (Emphasis added.)

The italicized portion of the *Bystery* court's conclusion was unnecessary to the resolution of the appeal. *Bystery*'s essential holding was that if a municipal highway or sidewalk is not "withdrawn from transportation uses," § 81.15, STATS., imposes liability for lack of repair. The converse of that holding is that if the municipality withdraws the sidewalk from a transportation function, the statute will not impose liability. In other words, because it was beyond dispute that the village of Sauk City had not withdrawn the sidewalk from public transportation use, and § 81.15 remained in effect, it was unnecessary to decide whether § 895.52, STATS., required owners to devote the highway or sidewalk to recreation.

■ The remaining question is whether the summary judgment evidence presents competing factual inferences that require a trial to determine if Matthew was engaged in recreational activity at the time of his accident. Each side pictures the evidence to call for a resolution in its favor as a matter of law. We conclude that there is no material factual dispute. The test to determine whether an injured person was engaged in a recreational activity has been described as an objective

one. *Silingo v. Mukwonago*, 156 Wis. 2d 536, 544, 458 N.W.2d 379, 382 (Ct. App. 1990). Under the test, we must examine all of the aspects of the activity, including its intrinsic nature, purpose and consequence. *Id.* The injured party's subject assessment of the activity is relevant but not controlling. *Id.*

Compelling testimony concerning subjective intent is found in Matthew's deposition. He "was going to cut across the logging road to either meet Steve and them on the trail or else at Scott's house." Matthew repeated several times the plan to meet for the ride either at Scott's house or "on the way to Scott's house down the trail . . . ." When asked what he planned to do if he met his friends on the trail, he replied: "Just meet up and ride around." He acknowledged that such riding around would be "just for fun," "essentially the same kind of riding [done] at the sand pit . . . ."

█

The dirt bike was not legally equipped for use on a public highway, and the only plan was to meet and ride "for fun." In this context, Matthew's added subjective purpose of shortening the trip to his friend's house does not alter the objective intrinsic recreational nature of his journey. The fortuitous failure of Matthew's friends to arrive before the accident is legally insignificant. The overriding nature, purpose and consequence of the entire episode was, in the words of the statute, "outdoor activity undertaken for the purpose of exercise, relaxation or pleasure . . . ." This case involved the use of a vehicle peculiarly adapted for recreational activity, driven to an area suitable for that purpose, involving an accident that occurred after the activity started and before it ended. To depict the event in different terms, "for transportation" as Matthew argues, either by reference to Matthew's subjective dual purpose, or to

segregate the trip into absolute rigid lines of activity, at one moment recreational and at another not, contravenes the statute's declaration that "this legislation should be liberally construed in favor of property owners to protect them from liability." Given these facts, we affirm the circuit court's grant of summary judgment based upon § 895.52, STATS.

*By the Court.*—Judgment affirmed.