GORDIE BOUCHER LINCOLN-MERCURY MADISON INC., a
Wisconsin corporation, Plaintiff-Appellant,†

v.

J & H LANDFILL, INC., a Wisconsin corporation, and
Browning-Ferris Industries of Wisconsin, Inc., a Wis-
consin corporation, Defendants-Respondents.

Court of Appeals

No. 91-2185. Submitted on briefs June 24, 1992.—Decided
November 5, 1992.

(Also reported in 493 N.W.2d 375.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Thomas M. Pyper* and *K. Michael Cooley* of *Whyte & Hirschboeck, S.C.*, of Madison.

For the defendants-respondents the cause was submitted on the brief of *David J. Pliner, John W. Markson,* and *Stephen J. Nording* of *Bell, Metzner, Gierhard & Moore, S.C.*, of Madison.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

EICH, C.J.    Gordie Boucher Lincoln-Mercury appeals from an order denying his[1] motion for specific performance of a contract subdividing a parcel of real estate for which final plat approval has not been obtained. The dispositive issue is whether Boucher may obtain performance of the contract in the face of a statute imposing criminal penalties on the seller for conveying such unapproved parcels. We hold that he may not, and we affirm the order.

In 1987, Boucher and J & H Landfill, Inc.,[2] both held accepted offers to purchase a single piece of prop-

---

[1] While Boucher is a corporation, we use personal pronouns to simplify the opinion.

[2] At some point, J & H sold its interest in the property to Browning-Ferris Industries of Wisconsin, Inc., which is also a

334

erty on Madison's far east side. Boucher sued the seller for specific performance and in January, 1988, while the lawsuit was pending, he and J & H concluded an agreement providing that J & H would take title to the property and then sell Boucher a portion of the land in exchange for the dismissal of his lawsuit against the seller.

Among other things, the agreement made transfer of the property to Boucher contingent upon his "obtaining all necessary land division and/or certified survey map approvals to permit the recording of a certified survey map . . .."[3] The agreement also contained a provision allowing Boucher to "waive" all contingencies:

> If any of the . . . contingencies in this Paragraph . . . are not *satisfied or waived* in writing by Boucher within one hundred eighty (180) days from closing of the Offer, then this agreement shall become null and void and J & H and Boucher shall each bear all of the expenses incurred by each of them until such time. (Emphasis added.)

Boucher soon ran into difficulty obtaining the required approvals,[4] and in February, 1989, J & H

party to this appeal. Again, for ease of exposition, we will refer to respondents as "J & H."

[3] Because it was purchasing less than fifteen acres, Boucher had to obtain various land division approvals from Dane County and the City of Madison. *See* sec. 236.10, Stats., Dane County, Wis., Regulations §§ 75.13 and 75.17, and Madison, Wis., General Ordinances § 16.23(2)-(4).

[4] One of the necessary approvals was that of the Town of Burke. In June, 1988, the town's plan commission approved Boucher's survey map subject to two conditions: (1) that Boucher show that he and J & H were committed to building the road; and (2) that Boucher observe a "landscaping easement," which required Boucher to maintain a buffer of trees between Highway

declared the agreement at an end. Boucher sued, claiming J & H had broken the contract. At trial, Boucher claimed he was entitled to conveyance of the property because he had waived the contract contingencies in a letter from his attorney to J & H's attorney. The trial court rejected the argument, concluding as a matter of law that the governmental approval contingencies could not be waived.

The trial continued and the jury eventually found that J & H had broken the contract and awarded Boucher $125,195 in damages.[5] Instead of seeking entry of judgment on the verdict, Boucher requested the court to enter an "interlocutory order of specific performance" directing J & H to convey the property to him. The court granted the request, with the following condition:

> [P]rovided that . . . J & H Landfill, Inc. . . . shall not be obligated to execute and deliver to plaintiff a good and sufficient conveyance . . . until such time as the contingency set forth in . . . the amended Agreement

151 and any commercial development along the highway. Boucher remained unable to meet the conditions and thus was unsuccessful in gaining the town's approval.

[5] The jury's verdict appears to have been based upon a determination that J & H broke the contract by failing to give Boucher a reasonable amount of time to meet the various conditions for transfer of the land. In its decision on postverdict motions, the court noted that "there [was] credible evidence . . . to support a view by the jury that J & H . . . failed to provide Gordie Boucher with a reasonable time within which to comply with the necessary condition to this sale, namely the obtaining of the land division approvals." Because the court had specifically instructed the jurors that, as a matter of law, Boucher could not waive the governmental approval contingencies, that issue was not before them.

is satisfied, i.e., the governmental approvals necessary for the land-division are obtained.

IT IS FURTHER ORDERED that . . . [i]f the governmental approvals are not secured within the four (4) month period ordered herein, then the amended Agreement will be at an end and plaintiff will be left with its legal damages award of $125,195.00 . . ..

Boucher was unable to obtain the approvals within the time set in the order. While he had obtained many of them, he remained unable to meet at least two of some twenty-four conditions Dane County had imposed for its approval of the sale.

One of the "problem" conditions was the county's requirement that newly-created lot lines be coterminous with existing county zoning districts. Meeting this condition would require J & H to rezone a portion of its property, which it declined to do. Another required reconfiguration of a frontage road running between Boucher's and J & H's parcels; and in order to comply with this requirement the certified survey map would have to be redrawn and signed by J & H—which J & H also refused to do.

Returning to court, Boucher sought additional time to secure the remaining approvals and asked that J & H be ordered to agree to rezone its property and consent to reconfiguration of the frontage road. He claimed that J & H's refusal to do so violated the provisions of the agreement requiring it to "cooperate . . . in all actions necessary to obtain [the] approvals" and not to unreasonably withhold consent to amendments to the certified survey map. The trial court, concluding that J & H's refusals were not unreasonable, declined to order J & H to rezone the property or sign the amended map. And because it was satisfied that Boucher was otherwise una-

ble to obtain the final approvals on its own, the court declared the contract at an end, leaving Boucher to the damages awarded by the jury as his only relief. Boucher appeals from that decision.

The subdivision statute, sec. 236.31(1), Stats., provides in part:

> Any subdivider . . . who offers or contracts to convey, or conveys, any subdivision as defined in s. 236.02(12) or lot or parcel which lies in a subdivision as defined in s. 236.02(12) knowing that the final plat thereof has not been recorded may be fined not more than $500 or imprisoned not more than 6 months or both . . ..

Boucher does not dispute the statute's application to the conveyance he seeks; and we believe it defeats his claim.

In *Vic Hansen & Sons, Inc. v. Crowley*, 57 Wis. 2d 106, 203 N.W.2d 728 (1973), a used car dealer sought a deficiency judgment on an installment sales contract after the purchaser had returned the car because of mechanical defects and stopped payment on the contract. The trial court rejected the purchaser's argument that the dealer's violation of sec. 218.01(6)(c), Stats. (1971), which provided criminal penalties for dealers who obtain purchasers' signatures on "blank" contracts, voided the contract. The supreme court disagreed, stating: "This court has stated that a contract made in violation of statute is void, whether there is a prohibition and a penalty or merely a penalty."[6] *Id.* at 117, 202 N.W.2d at 734, citing *Perma-Stone Corp. v. Merkel*, 255 Wis.

---

[6] While not necessary to its ultimate decision in the case, the *Vic Hansen* court took up the question and decided it. As such, its discussion "is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." *State v. Kruse*, 101 Wis. 2d 387, 392, 305 N.W.2d 85, 88 (1981) (quoting *Chase v.*

565, 39 N.W.2d 730 (1949), and *Guardian Agency v. Guardian Mut. Savings Bank*, 227 Wis. 550, 279 N.W. 79 (1938). Likewise, we stated in *Hiltpold v. T-Shirts Plus, Inc.*, 98 Wis. 2d 711, 716-17, 298 N.W.2d 217, 220 (Ct. App. 1980): "A contract is illegal . . . where a penalty is imposed for doing the act agreed upon."

It is undisputed that the final plat of the land in question has not been recorded. Indeed, it is conceded that the requirements for recording—obtaining all necessary governmental approvals—have not been met. Thus, to enforce the contract and force the conveyance would subject J & H to criminal penalties under sec. 236.31(1), Stats.

Boucher maintains, however, that sec. 236.31(3), Stats., gives him the right to waive the contingencies and obtain title to the property. The statute provides that "[a]ny conveyance or contract to convey made by the subdivider or the subdivider's agent contrary to this section . . . shall be voidable at the option of the purchaser . . . within one year after the execution of the . . . contract; but such . . . contract shall be binding on the vendor . . . ."

We reject his argument for two reasons. First, as we have determined above, we cannot interpret sub. (3) to allow a purchaser—for whatever reason—to force the seller to violate the law and become subject to criminal penalties for doing so. Second, we note that sec. 236.31(1), Stats., allows a contract or offer to convey subdivided land for which the final plat has yet to be approved—but *only* where the preliminary plat has been filed *and* the offer or contract "states on its face that it is contingent upon approval of the final plat and *shall be void if such plat is not approved*" (emphasis added).

*American Cartage Co.*, 176 Wis. 235, 238, 186 N.W. 598, 599 (1922)).

Interpreting sub. (3) as Boucher urges would write those provisions out of the statute.

Indeed, the law dictates the opposite conclusion. Where the public policy of the state is expressed in acts of the legislature, the statutory provisions "step in and control and regulate the mutual rights and obligations" of the parties to a contract relating to the subject matter of the statute. *Von Uhl v. Trempealeau County Mut. Ins. Co.*, 33 Wis. 2d 32, 38, 146 N.W.2d 516, 520 (1966) (quoting *Jones v. Preferred Accident Ins. Co.*, 226 Wis. 423, 426, 275 N.W. 897, 898 (1938)). That is the situation here. The legislature has declared that conveying subdivided land for which a final plat has not been approved should be prohibited on pain of fine or imprisonment. And "[w]hen the legislative will is expressed in the peremptory terms of such a statute, it 'is paramount and absolute, and cannot be varied or waived by the private conventions of the parties.' " *Id.*

Section 236.31(1), Stats., puts the "teeth" into the platting and recording requirements for land subdivisions by penalizing sellers who violate those requirements. *See* Swietlik, *The Law of Restrictions on Land in Wisconsin*, 41 MARQ. L. REV. 227, 253 (1957-58). It plainly provides protection to the purchaser; and sub. (3) allows the purchaser to forego that protection and treat the contract voidable only, should he or she decide to do so. But Boucher is attempting to use that shield as a sword to force J & H to convey in the face of the criminal penalties provided by sub. (1); and that he may not do. The statute allows only a single exception: where the preliminary plat has been approved and the contract provides that it will become void if final approval is not forthcoming.

If one thing has been established in this case it is that the final approvals for this subdivision have not been issued, nor are they forthcoming. As a result, J & H would be subject to the criminal penalties of sec. 236.31(1), Stats., if Boucher could force the conveyance through the contract provisions allowing him to waive contingencies. We decline Boucher's invitation to rewrite the applicable statutes and case law to allow the conveyance to take place.

We conclude, therefore, that the trial court properly denied Boucher's attempt to secure performance of the contract, and we affirm the judgment and order.[7]

---

[7] To the extent Boucher is claiming that he would be able to obtain the necessary governmental approvals, and thus validate the conveyance, if the court would order J & H to agree to an amendment to the certified survey map relocating and reconfiguring a frontage road and to rezone a portion of its own land, we reject that argument as well—as did the trial court. Here, Boucher relies on two provisions of the contract: one requiring J & H's cooperation in securing necessary governmental permits and approvals; and another stating that J & H may not unreasonably withhold its approval of certified survey map amendments. The trial court denied Boucher's request, concluding that J & H's refusal to consent to the survey map amendment and to rezone a portion of its land in order to improve Boucher's chances of obtaining the final approvals was not unreasonable. That is a legal conclusion which "is so intertwined with the factual findings supporting that conclusion, the appellate court should give weight to the trial court's decision, although [it] is not controlling." *Wassenaar v. Panos*, 111 Wis. 2d 518, 525, 331 N.W.2d 357, 361 (1983). The trial court determined that J & H's refusal to consent to alterations in the certified survey map relocating the frontage road was reasonable after considering the "significant" increased costs to J & H, the loss of some of its land and the comparative advantages and disadvantages to the parties flowing from such

*By the Court.*—Order affirmed.

alterations. As to the rezoning, the court considered the resulting uncompensated diminution in the value of J & H's land and the potential adverse effects on its future plans for the land and the adverse effect of the delays in obtaining the approvals likely to result from ongoing litigation over the property in which Boucher was involved. Giving due weight to the court's findings and conclusions, we are satisfied that, as the court determined, J & H could reasonably withhold its consent to these requests.