Kevin CHAPMAN, a Minor, by his next friend and Legal Guardian, Cindy CHAPMAN, Cindy and Leonard Chapman, and Family Health Plan, Plaintiffs,

v.

MUTUAL SERVICE CASUALTY INSURANCE COMPANY, Ralph Green Realtors, Inc., Richard Gurda d/b/a Gurdaco Income Property and Painting Company, ABC Insurance Company and Grace M. Oldenburg, Trustee and/or Personal Representative of the Estate of Laverne E. Mathea, Defendants,

No. 94–C–812.

United States District Court,
E.D. Wisconsin.

Jan. 28, 1999.

Timothy Cesar, Hausmann–McNally, Milwaukee, WI, for Plaintiff Kevin Chapman and Family Health Plan.

Emile H. Banks, Kasdorf, Lewis & Swietlik, W. Ted Tornehl, Borgelt, Powell, Peterson and Frauen, Milwaukee, WI, for Defendant Ralph Green Realtors and Mutual Casualty Ins. Co.

Steven J. Snedeker, Hills and Hicks, Brookfield, WI, for Mutual Service Casualty Ins. Co.

Richard Gurda, Franklin, WI, Pro Se Defendant.

James T. Murray Jr., Attorney Molly C. Feldbruegge, Peterson, Johnson & Murray, Milwaukee, WI, for Defendant Laverne E. Mathea and Grace Oldenburg.

Thomas E. Dolan, Dolan Law Offices, Milwaukee, WI, for 3rd Party Defendant James E. Wilkes d/b/a Wilkes Realty.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiffs Leonard and Cindy Chapman and their son Kevin bring this negligence action against numerous defendants, alleging various tortious acts in connection with the faulty inspection of their home for lead-based paint. Plaintiffs claim that Kevin suffers the effects of lead toxicity caused by the presence of lead-based paint in the house purchased by his parents.

The Chapman home was inspected by a government-approved independent appraiser, James Wilkes, during the Federal Housing Administration (FHA) mortgage loan approval process. Pursuant to this inspection, the house was repainted by Richard Gurda of Gurdaco Income Property & Painting Company. The Chapmans moved into the house shortly thereafter. Kevin, who was then about 4½, soon began to experience increased lead levels, allegedly from consuming paint chips or inhaling paint dust around the Chapman home.

In addition to Wilkes and Gurda (and after much cross-claiming, intervening and amended pleading), the Chapmans subsequently sued (1) the United States and the U.S. Department of Housing and Urban Development (HUD), alleging that Wilkes was an HUD employee; (2) Security Bank, S.S.B., the lender underwriting the Chapmans' HUD-insured FHA mortgage; (3) Ralph Green Realtors, Inc., the real estate broker for the sale of the Chapman home, who hired Gurda to repaint the house; (4) Grace Oldenburg, the seller of the house and personal representative of the estate of the late owner; (5) and Federal Insurance Company and Mutual Service Casualty Insurance Company, potential liability insurers of Security Bank and Ralph Green Realtor, respectively.

With the exception of individual defendants Wilkes and Gurda, all defendants filed dispositive motions. By previous order addressing several motions, the United States, Security Bank and Federal Insurance Company were dismissed as defendants, and the court elected to retain jurisdiction. This order addresses the following motions: (1) Ralph Green Realtor's motion for summary judgment; and (2) Grace Oldenburg's motion for summary judgment.

### I. FACTUAL BACKGROUND

On July 21, 1991, the Chapmans, first-time home buyers, signed an offer to purchase the

residential property located at 2165 S. 31st Street, Milwaukee. The property had been put up for sale by Grace Oldenburg on April 4, 1991, in her capacity as personal representative of the estate of the late owner, Laverne Mathea. Ralph Green Realtors ("RGR"), through its sales representative Milton Erdman, had prepared and listed the home for sale. The Chapman's offer was contingent on the plaintiffs obtaining an FHA First Mortgage Loan Commitment.

The Chapmans applied for the HUD loan at Security Bank ("Security"), which acted as a Direct Endorsement Underwriter for HUD loans. As part of the required process for obtaining such a loan, Security contacted HUD-approved appraiser Wilkes to do an appraisal and inspection of the property. Wilkes performed his appraisal on August 5, 1991, and completed the required appraisal form and "Attachment A," describing necessary repairs. Attachment A included the following instructions with respect to the garage and home exterior, to be completed before closing: "Remove all chipped or pealing [sic] paint, repaint as needed." (Dentice Aff. Ex. D.) Wilkes mailed the appraisal and Attachment A to Security.

The appraisal was initially reviewed by Lee Ann Johnson, a Security loan processor. On August 21, 1991, Johnson faxed a copy of Attachment A and a cover letter to Erdman at RGR, asking Erdman to make the necessary repair arrangements and to contact her with any questions. The letter also instructed Erdman to contact Security when the repairs were done so the bank could arrange a follow-up inspection.

According to Erdman and RGR owner Ralph Green, Attachment A was unclear and not sufficiently specific about areas needing repainting. Green asserts that someone from RGR called Johnson to clarify the extent of repairs needed and that Johnson said she would check with Wilkes and call back. According to Green, Johnson later called back and informed him that only the areas that were flaking or in need of paint would have to be repainted. The Security phone logs contain no record of these calls, nor does Johnson appear to recall them.

At some point after receiving Attachment A, RGR made arrangements to have the Chapman home repainted. Oldenburg agreed to pay for the external painting of the house, and the Chapmans agreed to paint the interior themselves. According to Erdman, Green suggested Richard Gurda to do the external painting. Erdman contacted Gurda about repainting the house, obtained an estimate, secured Oldenburg's approval of the fee, and ultimately gave Gurda directions on how to proceed.

On October 9, 1991, after Gurda had completed his work, Wilkes reinspected the house. Wilkes determined that the house satisfied HUD requirements and forwarded his final compliance inspection report to the bank. The closing took place two days later. Wilkes' report was reviewed and signed by Janet Jandl, a senior underwriter at Security, several weeks after the closing.

The Chapman family moved into the house in late October 1991. Kevin's blood was tested for lead toxicity in early December 1991 and on a monthly basis thereafter. According to the Chapmans, his lead levels continued to rise steadily, peaking in July 1992.

## II. DISPOSITIVE MOTIONS

### A. Summary Judgment Standard and Negligence Standards

Summary judgment is appropriate only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In weighing a summary judgment motion, courts should construe evidence in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, a genuine issue of material fact is not demonstrated by the existence of "*some* alleged factual dispute between the parties," *id.* at 247, 106 S.Ct.

2505, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Pointing to the "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient" to establish a material factual dispute. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. Rather, a genuine issue of material fact does not exist unless "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Id.* at 249, 106 S.Ct. 2505.

▆ Plaintiffs' claims are grounded in negligence law. To maintain a cause of action for negligence in Wisconsin, a plaintiff must show (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Rockweit v. Senecal*, 197 Wis.2d 409, 418, 541 N.W.2d 742 (1995). Because the existence of negligence is a mixed question of law and fact, generally the question of whether an individual is negligent is for the jury and should be decided by the court as a matter of law only in rare cases. *Olson v. Ratzel*, 89 Wis.2d 227, 251–52, 278 N.W.2d 238 (Ct.App.1979). However, where there is no dispute as to the facts alleged to give rise to a duty of care, the existence and scope of that duty is a question of law which the court may decide. *Id.; Ceplina v. South Milwaukee Sch. Bd.*, 73 Wis.2d 338, 341–42, 243 N.W.2d 183 (1976).

### B. Claims Against Ralph Green Realtors

The Chapmans allege that RGR breached its "warranties and covenants of good faith and fair dealing and/or [was] negligent" in connection with the sale of the Chapman home. (Fourth Am. Compl. ¶ 24.) Specifically, plaintiffs allege that this negligence includes but is not limited to their hiring, supervising and inspecting the work of the paint contractors, Richard Gurda and/or Gurdaco, and the inspector; their failure to warn and/or notify the Chapmans of lead based paint and its hazards; their failure to diligently investigate the material fact of lead base paint; their failure to meet the appropriate standards of care;

their failure to comply with Wisconsin Administrative Code Regulations and Licensing, Sec. 24.07, and other acts of negligence and breaches of their warranties and covenants of good faith and fair dealing. (*Id.*)

RGR moves for summary judgment on these claims, raising a number of arguments. First, RGR argues that plaintiffs' negligence suit is barred by the "as is" clause found in the signed offer of purchase for the Chapman home. Second, the realtor argues that plaintiff's have no claims based on RL 24.07 of the Wisconsin Administrative Code because the rule does not create a private cause of action and because, in any event, the RGR did not violate the rule. Finally, RGR maintains that it cannot be held liable for the allegedly negligent hiring and supervising of Gurda because Wisconsin does not recognize the tort of negligent hiring, training and supervision and because, in any event, RGR did not hire or "employ" Gurda.

### 1. Effect of "as is" clause

The offer of purchase signed by the Chapmans included the following language:

> Buyer is purchasing these premises in an "as is" condition with a full understanding that Sellers obtain these premises through estate, has [sic] never occupied the premises and is making no warranty as to the condition of the premises ... Buyer has had a full opportunity to inspect the premises and is not relying upon seller representations or any of its agent with respect to the condition of the premises.

(Banks Aff., Ex. E.) RGR argues that this section effectively precludes plaintiffs' present claims against the realtor. RGR relies on *Omernik v. Bushman*, 151 Wis.2d 299, 444 N.W.2d 409 (Ct.App.1989), and *Grube v. Daun*, 173 Wis.2d 30, 496 N.W.2d 106 (Ct. App.1992), to support this argument.

*Omernik* was a contract action in which the plaintiffs sought warranty damages for unseen structural defects in a purchased building. The *Omernik* court held that the presence of an "as is" clause such as the one above in a real estate contract puts the burden on the buyer to determine the condition

of the purchased property. *Omernik* at 303, 444 N.W.2d 409. *Grube,* on the other hand, was a tort action raising several claims, including negligence and various species of misrepresentation, based on the seller's failure to discover and disclose a gasoline leak on the purchased property. In discussing the misrepresentation claims, the *Grube* court considered whether an "as is" clause shields the seller only from breach of warranty claims in contract or also from tort claims based on misrepresentation. *Grube* at 59, 496 N.W.2d 106. The resultant holding was very narrow, describing a limited circumstance in which the scope of an "as is" clause extends outside the warranty context to bar certain claims in tort:

> [W]hile the "as is" clause is not a complete bar to these causes of action, its affect is to put the burden upon a buyer to determine the condition of the property purchased. *Id.* This shifting of the burden, with nothing more, protects a seller and his or her agent *from claims premised upon nondisclosure.*

*Id.* at 61, 496 N.W.2d 106 (emphasis added).

 Given these holdings and the "as is" clause in the Chapmans' offer of purchase, RGR may be shielded from plaintiffs' claims based on a failure to investigate the presence of lead-based paint and then properly warn the Chapmans. RGR's contention that the "as is" clause should bar *all* plaintiffs' claims is unavailing. Neither *Omernik* or *Grube* alters the basic presumption in Wisconsin, based on public policy, that tort disclaimers in contracts will not be honored unless the disclaimer is specific about the tort being disclaimed. *See Phillips Petroleum Co. v. Bucyrus–Erie Co.,* 131 Wis.2d 21, 33, 388 N.W.2d 584 (1986) ("The disclaimer must make it apparent that an express bargain was struck to forego the possibility of tort recovery in exchange for negotiated alternate economic advantages ...") The "as is" clause here contains no such specificity with respect to other negligence claims.

 Conversely, plaintiffs argue that even the claims premised on nondisclosure should not be barred under the above holdings, because of the following exception, established in *Grube:* "[O]nce the seller or his agent has

made an *affirmative representation* about some aspect of the property, the buyer is entitled to rely upon that statement and expect full and fair disclosure of all material facts related to that aspect of the property." *Grube* at 61, 496 N.W.2d 106. There is no evidence in the record of such an affirmative representation on the part of RGR. Plaintiffs argue that the affirmative *acts* of RGR led the Chapmans to reasonably believe that the problem of lead-based paint had been alleviated. The reasoning of the *Grube* exception, however, reflects a careful balancing of contract and tort principles and springs from the specific nature of misrepresentation claims, which always involve a factual representation. I decline to expand *Grube* to allow affirmative acts to nullify the effect of an "as is" clause.

Although the above analysis suggests that plaintiffs' claims alleging RGR's failure to investigate or warn should be dismissed, the discussion in the following two sections demonstrates why this is not necessarily the case.

## 2. Claims based on Rule RL 24.07

Chapter RL 24 of the Wisconsin Administrative Code regulates the conduct and ethical practices of real estate licensees. Rule RL 24.07 of this chapter concerns inspection and disclosure duties. Plaintiffs maintain that RGR

> had a duty, under [Rule RL 24.07] and the circumstances of this case, to disclose the very real possibility of lead-based paint in both the Listing Contract and the Offer of Purchase, a duty to disclose Attachment A to all parties in a timely manner, a duty to insist that an inspection contingency included in the Offer to purchase, and a duty to advise the Chapmans that they should make further investigation on their own regarding the existence of lead-based paint.

(Pl.'s Br. at 34.) RGR argues that any claims based on a violation of any part of Chapter RL 24 are barred because no private cause of action can be maintained under this regulatory chapter.

 I agree with RGR that Chapter RL 24 does not create a private cause of action

under the reasoning of *Fortier v. Flambeau Plastics Co.*, 164 Wis.2d 639, 476 N.W.2d 593 (Ct.App.1991). For an administrative rule to form an independent basis for civil liability, some expression of legislative intent to create such a private right of action must be present in the form and language of the rule. *Id.* at 658, 660, 476 N.W.2d 593. Nothing in the language of Chapter RL 24 evinces such legislative intent. Rather, as stated in Rule RL 24.01, "[t]he intent of the department in adopting the rules in this chapter is to establish minimum standards of conduct for real estate licensees and to define that conduct which may result in board discipline ..." Wis. Admin. Code § RL 24.01(2). Similarly, because I conclude that Chapter RL 24 was intended to shield the general public from various unethical real estate practices— and not "to protect a certain class of persons from a particular type of harm"—the chapter is not a "safety statute" as defined in Wisconsin case law. *Grube v. Daun*, 210 Wis.2d 681, 693, 563 N.W.2d 523 (1997). Accordingly, a violation of Rule RL 24.07 such as plaintiffs allege does not constitute negligence *per se* in Wisconsin. *Id.* at 692, 563 N.W.2d 523.

This is not to say, however, that Chapter RL 24 is irrelevant to this negligence action. This chapter and Rule RL 24.07 in particular are relevant indicators of the duty of care expected of reasonably competent real estate brokers. *See, e.g., Grube*, 173 Wis.2d at 52, 496 N.W.2d 106. Plaintiffs appear to rely on Chapter RL 24 for precisely this purpose— "as additional authority on recognized standards of conduct for licensees in order to show that Ralph Green Realtors and its agents breached their duty of care to the Chapmans." (Pl.'s Br. at 35.) This use of the regulations is quite acceptable under Wisconsin negligence law. *See also Meas v. Young*, 142 Wis.2d 95, 417 N.W.2d 55 (Ct. App.1987).

█ RGR also moves for summary judgment on plaintiffs' claims based on Rule RL 24.07, arguing that the realtor did not in fact violate the rule. Plaintiffs have demonstrated a factual dispute on this point. The affidavit of real estate expert Martin J. Greenberg alone establishes a genuine issue of material fact as to whether RGR violated various provisions of Chapter RL 24, thereby breaching some duty of care toward the Chapmans. (*See* Greenberg Aff., ¶ 18.) Greenberg's opinion is in turn based on the deposition transcripts of numerous individuals and other exhibits, all part of the voluminous record in this case. (*See Id.*, ¶ 9.) Summary judgment is therefore not appropriate on plaintiffs' RL 24.07 claims. *Celotex* at 322, 106 S.Ct. 2548.

**3. Claims of negligent hiring, training or supervision**

RGR argues that, at the time of its allegedly negligent conduct in 1991, Wisconsin had not recognized the tort of negligent hiring, training or supervision in this state, requiring dismissal of plaintiffs' claims based on that theory. Quite recently and after the briefing of RGR's motion, the state supreme court explicitly recognized negligent hiring, training or supervision as a valid tort claim. *See Miller v. Wal–Mart Stores, Inc.*, 219 Wis.2d 250, 580 N.W.2d 233 (1998). Further, even prior to *Miller*, both the Wisconsin Supreme Court and the Seventh Circuit had long-assumed the validity of these claims in Wisconsin *See Pritzlaff v. Archdiocese of Milwaukee*, 194 Wis.2d 302, 325–26, 533 N.W.2d 780 (1995) ("[F]or purposes of this case we assume, but do not decide, that [such a cause of action exists in Wisconsin.]").

In *Midwest Knitting Mills, Inc. v. United States*, 950 F.2d 1295 (7th Cir.1991), the Seventh Circuit discussed analogous claims previously sustained by Wisconsin courts, such as claims based on agency law and on the failure to adequately supervise independent contractors. *See id.* at 1298–1300. Finding that the general tort of negligent supervision of employees "enjoys a secure position in the mainstream of American common law," the court concluded that it had no reason to believe that the claim was invalid in Wisconsin. *Id.* at 1298.

█ The *Miller* holding thus represents not a break with precedent but an articulation of what had been assumed to be the state of the law. The *Miller* court clearly could have specified a prospective application only, as in *Sorensen v. Jarvis*, 119 Wis.2d

627, 350 N.W.2d 108 (1984), but it did not. Further, under the nonretroactivity analysis approved in *Kurtz v. City of Waukesha*, 91 Wis.2d 103, 280 N.W.2d 757 (1979), I find no reason to so limit *Miller* myself. It would be strange indeed if, by explicitly recognizing this cause of action, the court cast doubt on the cognizability of earlier claims of this nature—until now presumptively valid in many Wisconsin courts. Rejecting this illogic, I assume that pre-*Miller* claims of negligent hiring, training or supervision remain valid and cognizable in Wisconsin.

RGR also argues that any claims based on the negligent hiring, training or supervision of Richard Gurda by the realtor should be dismissed because RGR did not "hire" Gurda as an employee to do the exterior painting on the Chapman home. RGR contends that Gurda was an independent contractor and was actually hired by the seller, Grace Oldenburg. (RGR's Br. at 25–26.) The realtor cites the general legal principle that one who contracts with an independent contractor is not liable to others for the torts of the independent contractor. *See Snider v. Northern States Power Co.*, 81 Wis.2d 224, 232, 260 N.W.2d 260 (1977).

Even if the court assumes (without deciding) that Gurda was an independent contractor, RGR is not exempted from liability for Gurda's actions or for its own actions with respect to Gurda under the facts of this case. In theory, the common law independent contractor rule set forth in *Snider* places limits on the doctrine of respondeat superior. In practice and over time, however, courts have recognized a number of exceptions to this general rule. *See Brooks v. Hayes*, 133 Wis.2d 228, 233–34, 395 N.W.2d 167 (1986); Restatement (Second) of Torts § 409 cmt. b (1965). The Restatement identifies two broad categories of exceptions, both of which apply to this fact situation: employers of independent contractors may be liable (1) if negligent "in selecting, instructing or supervising the contractor"; and (2) if there exist "[n]on-delegable duties of the employer, arising out of some relation toward the public or a particular plaintiff." *Id.*

The first category of exceptions clearly echoes the tort officially recognized by *Mil-*

*ler.* Other Wisconsin courts have impliedly validated claims for negligent supervision, even when the facts involved an independent contractor rather than an employee. *See, e.g., A.E. Investment Corp. v. Link Builders, Inc.*, 62 Wis.2d 479, 214 N.W.2d 764 (1974). RGR argues that it still did not "hire" Gurda but served as a liaison between Gurda and Oldenburg, who paid Gurda's fees and signed a contract proposal for Gurda to do the painting. The question of who actually hired Gurda—RGR, Oldenburg, or both—does not have the talismanic significance urged by the parties. Tort claims alleging negligent hiring, training or supervision do not premise liability solely on the negligence of the employee or independent contractor under agency principles, for which the question of who hired whom may be more important. Rather, liability under this claim flows from the negligent acts or omissions of the employer itself, under the general analysis of duty and forseeability in Wisconsin negligence law. *See, e.g., Miller,* 219 Wis.2d at 260–61, 580 N.W.2d 233 ("[I]t is foreseeable that failing to properly train or supervise any employee, but especially a loss prevention associate, would subject shoppers to unreasonable risk, injury or damage.")

The second category of exceptions to the independent contractor rule also finds support in Wisconsin law. In *Brooks v. Hayes*, a real estate broker contracted with landowners to construct a prefabricated home on their land. *Id.*, 133 Wis.2d at 231, 395 N.W.2d 167. The realtor (functioning here as a general contractor) hired an independent contractor to do certain work in constructing the home. The work was negligently performed. The landowners eventually sued both the realtor and the independent contractor under tort and contract theories. *Id.* at 233, 395 N.W.2d 167. In discussing the plaintiffs' tort claims against the real estate broker, the *Brooks* court found that the realtor was vicariously liable for the negligence of the independent contractor under the non-delegable duty exception to the independent contractor tort rule. *Id.* at 247–49, 395 N.W.2d 167.

Essentially, the non-delegable duty exception is based on the theory that

certain responsibilities are so important that an employer or principal should not be permitted to bargain away the risks involved in performance. *Arsand v. City of Franklin,* 83 Wis.2d 40, 54 n. 8, 264 N.W.2d 579 (1978). These responsibilities, or duties, may be imposed by statute, by contract, by franchise or charter, or by common law. *Brooks* at 247, 395 N.W.2d 167 (citing Prosser & Keaton, *Torts,* § 71, at 511 (5th ed.1984)). In the present case, both statute and regulation impose arguably relevant duties on RGR toward the Chapmans *and* toward Oldenburg in the realtor's fiduciary capacity. *See, e.g.,* Wis. Stat. § 452.133 (Duties of brokers); Wis. Admin. Code § RL 24.07 (Inspection and disclosure duties); *see also* Restatement (Second) of Torts § 424 (1965) (Precautions required by statute or regulation); Restatement (Second) of Agency § 214 (1958) (Failure of principal to perform non-delegable duty). As a matter of public policy, these duties are non-delegable.

■ Additionally, I find that common law imposes a non-delegable duty on RGR under the following rationale, adopted from the Restatement by the Wisconsin Supreme Court in *Brooks:*

> One who employs an independent contractor to perform services for another which are accepted in the reasonable belief that the services are being rendered by the employer or by his servants, is subject to liability for physical harm caused by the negligence of the contractor in supplying such services, to the same extent as though the employer were supplying them himself or by his servants.

*Brooks* at 249, 395 N.W.2d 167 (quoting Restatement (Second) of Torts § 429 (1965)). Both the Chapmans and Oldenburg express the reasonable belief that Gurda was, in effect, working for RGR. Gurda himself concurs with this understanding. (Dentice Aff., Ex. Q at 22–24.) That is enough to create a non-delegable duty under the above rationale.

In sum, RGR's final argument—that plaintiffs' claims based on negligent hiring or supervision should be dismissed because of Gurda's asserted status as an independent contractor hired by Oldenburg—also fails.

### 4. Status of claims based on failure to investigate or warn

■ The previous sections have not precisely delineated RGR's duty of care toward the Chapmans, but merely conclude that a duty exists such that summary judgment on plaintiffs' negligence claims is unwarranted. It does appear, however, that certain duties imposed by statute and regulation may be in direct conflict with the exculpatory effect of the "as is" clause, also discussed above. RGR cannot be *both* shielded from claims alleging a failure to investigate or warn about lead-based paint conditions *and* obligated by statute or rule to conduct certain inspections and make specific disclosures. As always in a conflict of this nature, statutory terms trump the parties bargained-for positions in contract. "Where the public policy of the state is expressed in acts of the legislature, the statutory provisions step in and control and regulate the mutual rights and obligations of the parties to a contract relating to the subject matter of the statute." *Gordie Boucher Lincoln–Mercury v. J & H Landfill, Inc.,* 172 Wis.2d 333, 340, 493 N.W.2d 375 (Ct.App.1992) (quotation marks omitted). In this respect, administrative rules also express important public policy and have the same effect as legislative enactments. *M & I First Nat'l Bank v. Episcopal Homes Management, Inc.,* 195 Wis.2d 485, 506–07, 536 N.W.2d 175 (Ct.App.1995).

In light of this principle, plaintiffs' claims against RGR alleging a breach of the duty to investigate and warn about the presence of lead-based paint are barred—but only to the extent that the specific relevant duties are *not* imposed by statute or regulation. All other negligence claims against RGR remain viable.

### C. Claims Against Grace Oldenburg

The Chapmans allege that Oldenburg hired or contracted with Gurda to paint the Chapman property and that

> Oldenburg was negligent and such negligence includes the hiring of the above-said contractor, in failing to properly supervise repairs performed by the contractor, fail-

ing to inspect repairs performed by the contractor, failing to investigate the subject property for lead base paint and failing to warn Chapmans of the existence of lead base paint.

(Fourth Am. Compl. ¶ 31.) In its cross-claims against Oldenburg, RGR makes substantially the same allegations as plaintiffs. (*See* RGR's Answer to Second Am. Compl. ¶ 9–10.)

Oldenburg moves for summary judgment on all claims against her, making four arguments. One argument, that pre-*Miller* claims of negligent hiring or supervision are not valid, I already rejected in my discussion of the previous motion. A second argument, that any negligence ultimately attributed to Oldenburg was not a cause-in-fact of any injury, is generally not an appropriate basis for summary judgment and particularly not in this multi-defendant case, notwithstanding Oldenburg's unsupported assertion that reasonable people could not differ on the question of causation. *See Morgan v. Pennsylvania Gen. Ins. Co.*, 87 Wis.2d 723, 735–36, 275 N.W.2d 660 (1979). The two remaining arguments, addressed below, sound familiar but produce a different outcome in the case of Oldenburg: (1) Oldenburg had no duty to independently investigate or warn plaintiffs about the existence of lead-based paint on the premises; and (2) Oldenburg did not hire Gurda and therefore should not be liable for negligently hiring or supervising him.

### 1. No duty to investigate or warn

■ Based on my analysis of the holdings in *Omernik* and *Grube* in the discussion of RGR's summary judgment motion, the seller Oldenburg is shielded from claims based on a failure to investigate the presence of lead-based paint and warn the Chapmans. In the case of Oldenburg, moreover, the exculpatory effect of the "as is" clause in the Chapmans' offer of purchase is not overcome by the imposition of statutory or other non-delegable duties. Therefore, plaintiffs' claims against Oldenburg alleging a failure to investigate or warn will be dismissed.

### 2. Not liable for negligent hiring or supervision

The remaining claims against Oldenburg allege that the seller breached her duty to exercise reasonable care in the hiring and supervision of Gurda. Oldenburg assumes that Gurda was an independent contractor, and plaintiffs do not dispute this legal conclusion; for the purposes of this motion, the court will also make this assumption.

Oldenburg argues primarily that she had no duty to take care in hiring and overseeing Gurda because she did not "hire" him. As suggested before, the sole question of who "hired" an independent contractor is not dispositive on the question of duty to supervise the individual's performance. By analogy, the dominant test in determining whether an individual is a "servant" (subjecting the master to vicarious liability) or an independent contractor is the employer's right to control the physical conduct of the worker in performing the hired service. *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis.2d 188, 198–99, 423 N.W.2d 848 (1988). Many other factors may also be considered, including "the place of work, the time of the employment, the method of payment, the nature of the business or occupation, which party furnishes the instrumentalities or tools, the intent of the parties to the contract, and the right of summary discharge of employees." *Id.* at 199, 423 N.W.2d 848. Wisconsin jury instructions on this issue also reference the Restatement (Second) of Agency, which includes as relevant factors: whether the work is usually done under the employer's direction, the skill required, and whether it is part of the employer's regular business. *See* Wis. J I—Civil 4030; Restatement (Second) of Agency § 220 (1958).

Similarly, the duty to exercise reasonable care in the selection and supervision of an independent contractor should correspond meaningfully to the employer's degree of control over the performed work, based on all of the above factors. To conclude otherwise would swallow the independent contractor distinction. For example, § 414 of the Restatement (Second) of Torts states the following exception to the general rule that

employers are not liable for the negligence of independent contractors:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

Restatement (Second) of Torts § 414 (1965). But the comments after this section indicate that in order for this rule to apply

> the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

Restatement (Second) of Torts § 414 cmt. c (1965).

■ Nothing in the record adduced by plaintiffs supports the reasonable inference that Oldenburg retained such meaningful control over Gurda's work. The relevant facts are undisputed. RGR selected Gurda to paint the house based on Gurda's previous work for the realtor. RGR representative Erdman communicated Gurda's estimate to Oldenburg, giving her no other choices in selecting a painter. Oldenburg signed Gurda's proposal to paint the house and paid half the $400 fee by check. The bill for the second half was sent to RGR, and payment was deducted from the sales proceeds at closing. Oldenburg never spoke to Gurda. RGR alone contacted Gurda, negotiated his price and gave the painter instructions about what needed to be done at the Chapman home. (Feldbruegge Aff. Ex. B at 84–89, 98–99; Ex. J at 11, 23–24.)

Plaintiffs argue that in theory Oldenburg "was the boss over the people at Ralph Green Realty [sic], and that she was therefore free to accept or reject Erdman's recommendation of Gurda." (Pl.'s Br. in Opp'n to Oldenburg's Mot. at 6.) They point out that her approval was necessary for the painting to even occur. Plaintiffs also suggest that Oldenburg's general layman's knowledge of the dangers of lead-based paint, and the fact that she possessed a copy of the inspection report requiring removal of chipped and peeling paint, should have alerted her to the importance of Gurda's work and compelled her to supervise it with care.

I do not agree that Oldenburg had a duty to personally supervise Gurda's work or to doublecheck the hiring suggestions of her real estate broker, RGR. It is undisputed that Oldenburg had no experience or specific familiarity with the hazards of lead-based paint or proper abatement procedures and standards. Understandably, she relied on her licensed realtor to supervise the home repairs required for closing. (*See* Bischmann Aff. Ex. A at 53–62.) At most, plaintiffs have shown that Oldenburg had a theoretical right to intervene if she wanted, akin to the "general right" to control deemed insufficient to overcome non-liability under the independent contractor rule. *See* Restatement (Second) of Torts § 414 cmt. c (1965). Under the circumstances presented here—in which Oldenburg had no contact with Gurda and no realistic ability to provide professional oversight—she was under no legal duty to supplement RGR's choice and supervision of Gurda with her own.

■ Finally, plaintiffs point to several other exceptions to the independent contractor rule, also found in the Restatement. Two fall into the broad category of negligence in selecting, instructing or supervising a contractor, and as such are defeated by the reasoning just presented. *See* Restatement (Second) of Torts § 409 cmt. b, §§ 411, 413 (1965). Two fall into the broad category of negligence with respect to work which is specially, peculiarly or inherently dangerous. *See id.* § 416, 427. I agree with Oldenburg that painting and scraping a house is not an inherently dangerous activity of the type

meant to be covered by these exceptions. Since Oldenburg is not subject to any other relevant statutory or non-delegable duties, plaintiffs' claims against her based on a failure to exercise reasonable care in hiring or supervising Gurda will also be dismissed. This accounts for the balance of the remaining claims against Oldenburg.

**THEREFORE, IT IS ORDERED** that Ralph Green Realtors' motion for summary judgment is **DENIED;** however, summary judgment on plaintiffs' claims alleging a breach of RGR's duty to investigate and warn is **GRANTED,** but only to the extent that specific relevant duties are not imposed by statute or regulation.

**IT IS FURTHER ORDERED** that Grace Oldenburg's motion for summary judgment is **GRANTED** on all claims against her, and she is **DISMISSED** as a defendant to this action.

Pending motions by Mutual Service Casualty Insurance Company to withdraw or amend discovery responses and for declaratory judgment respecting insurance coverage are resolved by separate order.