Marlene B. PETZEL and Donald Petzel,
Plaintiffs-Appellants,

v.

VALLEY ORTHOPEDICS LTD., Mark A. Wikenheiser,
M.D. and The Medical Protective Company,
Defendants-Respondents,

ST. CROIX REGIONAL MEDICAL CENTER, Injured
Patients and Families Compensation Fund and
ABC Insurance Company,
Defendants.

Court of Appeals

*No. 2008AP2474. Submitted on briefs May 26, 2009.
—Decided June 23, 2009.*

2009 WI App 106

(Also reported in 770 N.W.2d 787.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jason W. Whitley* of *Novitzke, Gust, Sempf, Whitley & Bergmanis*, Amery.

On behalf of the defendants-respondents, the cause was submitted on the brief of *J. Drew Ryberg* and *Kathryn E. Wahl* of *Ryberg & Happe, S.C.*, Eau Claire.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Marlene Petzel[1] appeals a summary judgment dismissing her medical malpractice claims against Mark Wikenheiser and Valley Orthopedics. She argues there are genuine issues of material fact precluding summary judgment on the issues of negligence, res ipsa loquitur, respondeat superior, and borrowed servant. We conclude summary judgment is unwarranted regarding all four claims, and reverse and remand.

## BACKGROUND

¶ 2. Wikenheiser performed surgery on Petzel's severely arthritic hip. Jamie Pearson, a physician assistant, assisted Wikenheiser during surgery.[2] At some point during the surgery, one of Petzel's nerves was damaged causing partial paralysis of her left foot. Daniel Hoeffel, Wikenheiser's expert, testified at his deposition that the injury occurred to the sciatic nerve at the site of the surgery at the hip. Petzel's experts, on the other hand, testified the injury occurred due to pressure applied to the peroneal nerve at the knee. The peroneal nerve is a branch of the sciatic nerve. The parties agreed that if the injury occurred at the hip, it was a known potential complication and did not constitute a deviation from the standard of care.

¶ 3. Wikenheiser and Pearson both testified they each handled the left leg during the course of the surgery and that it was Wikenheiser who rotated Petzel's bent leg to dislocate the hip joint after making

---

[1] We refer to Marlene Petzel throughout this decision. Donald Petzel's claims are derivative of Marlene's.

[2] Petzel did not name Pearson as a defendant.

surgical incisions. Dr. Michael Grear testified this procedure requires the person to "grab the extremity, bend the knee, [and] rotate the leg to functionally dislocate the hip . . . ."

¶ 4. Wikenheiser[3] moved for summary judgment on the issues of negligence and res ipsa loquitur. In her response brief in the circuit court, Petzel also presented two distinct theories of vicarious liability against Wikenheiser based on Pearson's actions: respondeat superior and borrowed servant. The circuit court granted Wikenheiser's motion, dismissing the claims of negligence, res ipsa loquitur, and vicarious liability. The court, however, did not specifically address the borrowed servant argument.[4]

## DISCUSSION

¶ 5. We review summary judgment independently, applying the same standards as the circuit court. *Germanotta v. National Indem. Co.*, 119 Wis. 2d 293, 296–97, 349 N.W.2d 733 (Ct. App. 1984). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Id.* at 296. When deciding whether there are genuine issues of material fact, we view the evidence, and the reasonable inferences from that evidence, in a light most favorable to the nonmov-

---

[3] Our references to Wikenheiser are inclusive of Valley Orthopedics Ltd., his solely owned business, unless the context indicates otherwise.

[4] As discussed below, the court did address the borrowed servant doctrine when it granted St. Croix Regional Medical Center's motion for partial summary judgment at the same hearing.

ing party. *See Kraemer Bros. v. United States Fire Ins. Co.*, 89 Wis. 2d 555, 566–67, 278 N.W.2d 857 (1979).

NEGLIGENCE

¶ 6. The circuit court aptly summarized the expert testimony in this case: "[E]ither the injury happened at the knee due to positioning or trauma, or the injury happened at the hip, the site of the incision. If it happened at the hip Dr. Grear says there's no violation of the standard of care and therefore, no negligence." Wikenheiser argues summary judgment is therefore appropriate because Grear, Petzel's own expert, testified Wikenheiser's surgery was "exemplary."

¶ 7. Wikenheiser's argument rests entirely on the assumption that if the injury happened at the knee, it could only have been caused by Pearson. If this assumption is correct, then the circuit court properly concluded Wikenheiser could not be found negligent merely as the "captain of the ship." *See Lewis v. Physicians Ins. Co.*, 2001 WI 60, ¶ 22, 243 Wis. 2d 648, 627 N.W.2d 484 (declining to adopt the captain of the ship doctrine in Wisconsin).

¶ 8. Wikenheiser's argument ignores Wikenheiser's and Pearson's testimony that they both handled Petzel's leg during the course of the surgery and that Wikenheiser dislocated the hip. Instead, Wikenheiser argues we should believe Hoeffel's testimony that the injury occurred at the hip, because "Hoeffel's experience leads him to the unequivocal conclusion that [Petzel's expert] is wrong in opining that damage at the hip in surgery could not spare the thigh but manifest below the knee . . . ." Wikenheiser further stresses that Hoeffel concluded Pearson could not have applied enough pres-

sure to cause an injury at the knee, based on Petzel's size and Pearson's testimony she held the limb for about five minutes.

██

¶ 9. Wikenheiser's argument unequivocally demonstrates there are material issues of disputed fact. Courts do not weigh the evidence when determining summary judgment motions. Summary judgment is inappropriate because the evidence creates a factual dispute as to the location of the injury and, if it occurred at the knee, who caused it. Grear did testify he initially believed the hip surgery itself was exemplary. Nonetheless, he subsequently concluded based on test results that the injury occurred at the knee rather than the sciatic nerve at the hip, and opined that the injury therefore constituted a deviation from an acceptable standard of medical care.[5] Further, if a jury concluded the injury occurred at the knee, Hoeffel's testimony that Pearson could not have applied the necessary pressure could reasonably support an inference that Wikenheiser did so.

RES IPSA LOQUITUR

██

¶ 10. The doctrine of res ipsa loquitur may apply upon the introduction of some evidence which does not purport to furnish a complete and full explanation of

---

[5] Wikenheiser emphasizes that Grear had no criticism of Wikenheiser except as captain of the ship. However, the record indicates Grear assumed that Wikenheiser's assistant both dislocated the hip and handled the leg throughout the procedure. Further, the specific question asked was whether Grear had any criticism of Wikenheiser if the injury was caused by his assistant applying pressure on the peroneal nerve.

the occurrence. *Knief v. Sargent*, 40 Wis. 2d 4, 9, 161 N.W.2d 232 (1968). In applying the theory, "one's reasoning does not proceed from cause to effect, but from the effect to the cause." *Id.* at 6 (citing *Turk v. H. C. Prange Co.*, 18 Wis. 2d 547, 119 N.W.2d 365 (1963)). Res ipsa loquitur permits an inference, which the jury may or may not accept, that the defendant's negligence caused the plaintiff's injuries. *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 16–17, 496 N.W.2d 226 (Ct. App. 1993). The instruction should be given in a medical malpractice action if the following conditions are met:

> (a) either a layman is able to determine as a matter of common knowledge or an expert testifies that the result which has occurred does not ordinarily occur in the absence of negligence, (b) the agent or instrumentality causing the harm was within the exclusive control of the defendant, and (c) the evidence offered is sufficient to remove the causation question from the realm of conjecture, but not so substantial that it provides a full and complete explanation of the event.

*Id.* (citing *Lecander v. Billmeyer*, 171 Wis. 2d 593, 601–02, 492 N.W.2d 167 (1992)). Whether these conditions are met is a legal issue that we determine independent of the circuit court. *Lecander*, 171 Wis. 2d at 602.

¶ 11. A res ipsa loquitur instruction may be appropriate in this case. However, it could only be given regarding the question of who caused the injury to the peroneal nerve. As to condition (a), it would be appropriate to consider the instruction if the jury first concluded Petzel suffered a peroneal nerve injury rather than a sciatic nerve injury. This is because Grear testified a foot paralysis would constitute a deviation from the standard of care, i.e. negligence, if it was

caused by injury to the peroneal nerve. Conversely, it would be improper to consider a res ipsa loquitur instruction if the jury concluded the sciatic nerve was damaged, because the experts agreed a sciatic nerve injury could occur in the absence of negligence.

¶ 12. Jumping next to condition (c), the evidence of who caused a peroneal nerve injury, and how, is neither overwhelming nor too speculative. Both Pearson and Wikenheiser handled the leg during the surgery—either of them could have potentially damaged the peroneal nerve—and it was undisputed that the foot paralysis was caused during the operation. Yet, neither could postulate when or how such an injury might have occurred.

¶ 13. Regarding condition (b), Petzel's leg was in the exclusive control of Pearson and Wikenheiser during the surgery. This is substantially the same situation addressed in *Fiumefreddo*, 174 Wis. 2d at 19–25, where the court concluded a res ipsa loquitur instruction was appropriate where the patient was under the exclusive medical control of two doctors during a surgery. The court reasoned that the doctors were in a better position to know what happened than the patient who, like Petzel, was under anesthesia at the time. *See id.* at 24. Thus, res ipsa loquitur relieves Petzel of the burden of proving both how precisely her peroneal nerve was injured and which person caused her injury, making Wikenheiser jointly and severably liable.[6] *See id.* at 21–24.

¶ 14. We recognize that *Fiumefreddo* also relied in part on a fairness rationale, noting that both physicians were defendants in the action. *Id.* at 24. For whatever

[6] Had she been made a party, Pearson also would be jointly and severably liable under the res ipsa loquitur theory.

reason, Petzel failed to name Pearson as a defendant in this case. Nonetheless, we see no reason why Wikenheiser could not have impleaded Pearson had he wished to do so.[7] In any event, Wikenheiser does not discuss the condition (b) "exclusive control" requirement whatsoever, arguing merely that Petzel proved too much under condition (c). Further, any residual unfairness caused by Pearson's omission as a party is diminished by our subsequent conclusions that Petzel may pursue her claims that Wikenheiser was also vicariously liable for Pearson's actions.

RESPONDEAT SUPERIOR

¶ 15. Although a person is generally only liable for his or her own torts, under certain circumstances the law will impose vicarious liability. *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 17, 273 Wis. 2d 106, 682 N.W.2d 328. The doctrine of respondeat superior, or the master-servant rule, is one type of vicarious liability. "Vicarious liability under respondeat superior is 'liability that a supervisory party (such as an employer) bears for the actionable conduct of a subordinate or associate (such as an employee) because of the relationship between the two parties.' " *Id.* (quoting BLACK'S LAW DICTIONARY 927 (7th ed. 1999)).

---

[7] Thus, this case is similarly distinguished from *Collins v. Eli Lilly Co.*, 116 Wis. 2d 166, 342 N.W.2d 37 (1984), with which *Fiumefreddo v. McLean*, 174 Wis. 2d 10, 22, 496 N.W.2d 226 (Ct. App. 1993), was concerned. *Collins* involved potentially hundreds of manufacturers and marketers over a period of years that could have provided the unsafe drug causing the injury. *See Fiumefreddo*, 174 Wis. 2d at 22–24. Here, there are only two potential tortfeasors, and both could have been joined as defendants.

¶ 16. "A prerequisite to vicarious liability under respondeat superior is the existence of a master/servant relationship." *Id.*, ¶ 18 (citing *Arsand v. City of Franklin*, 83 Wis. 2d 40, 48, 264 N.W.2d 579 (1979); RESTATEMENT (SECOND) OF AGENCY, § 219 (1958)).

> Vicarious liability under respondeat superior typically arises in employer/employee relationships but is not confined to this type of agency. A servant need not be under formal contract to perform work for a master, nor is it necessary for a person to be paid in order to occupy the position of servant.

*Kerl*, 273 Wis. 2d 106, ¶ 22. Although multiple factors may be considered in determining whether a master-servant relationship exists, "[t]he right to control is the dominant test in determining whether an individual is a servant." *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 199, 423 N.W.2d 848 (1988). Even though the captain of the ship doctrine does not apply in Wisconsin, a "surgeon can be vicariously liable for the negligence of [assistants] if the [assistants] are under the surgeon's control and supervision."[8] *Lewis*, 243 Wis. 2d 648, ¶ 22 n.10 (majority), ¶ 33 (Abrahamson, C.J. concurring) (quote in concurrence). Whether Pearson was under Wikenheiser's control and supervision is a question of fact. *See id.*, ¶ 33; *Kettner v. Wausau Ins. Cos.*, 191 Wis. 2d 723, 737, 530 N.W.2d 399 (Ct. App. 1995).

---

[8] Although briefly discussing the doctrine, the court did not conduct a respondeat superior analysis in *Lewis* because the plaintiff had not presented any argument relying on that theory. *Lewis v. Physicians Ins. Co.*, 2001 WI 60, ¶ 12, 243 Wis. 2d 648, 627 N.W.2d 484.

¶ 17. Wikenheiser, through his solely owned company, Valley Orthopedics, worked as an independent contractor for St. Croix Regional Medical Center, a hospital. Pearson, on the other hand, was employed by River Valley Medical Center, a doctor-owned clinic. Pearson testified she was hired to be Wikenheiser's assistant and spent ninety percent of her time working with him. Wikenheiser was Pearson's sole required supervising physician. *See* Wis. Admin. Code § Med 8.07 (Dec. 1999).[9]

██

¶ 18. Wikenheiser argues respondeat superior cannot apply because Pearson was not his employee, and relies on various facts indicating he was not her employer. For instance, Wikenheiser had no right to fire Pearson and could not demand that she be available for any given surgery. As set forth above, however, the existence of an employer-employee relationship is not determinative. What matters is whether Pearson was acting under Wikenheiser's supervision and control. Pearson testified as follows:

> Q: In terms of the period of time that you are holding [Mrs.] Petzel's leg, are you under the direction of Mark Wikenheiser?
>
> A: Yes.
>
> Q: Does he tell you how to hold it, where to hold it, and what position to hold it in?
>
> A: Yes.
>
> Q: If he doesn't like the way that you're holding an affected extremity, will he tell you to change it and do it differently?

---

[9] "A physician assistant may [however] be supervised by more than one physician." Wis. Admin. Code § Med 8.10(1) (Dec. 1999).

A: Yes.

. . . .

Q: In fact, he taught you on the job how to hold it so he would typically give you instruction throughout the procedure, is that fair?

A: Yes.

¶ 19. Additionally, Pearson had a supervisory agreement with Wikenheiser pursuant to WIS. ADMIN. CODE § Med 8.07. Chapter Med 8 strictly regulates physician assistants. For example, § Med 8.07 (1) states "the entire practice of any physician assistant shall be under the supervision of a licensed physician. . . . A physician assistant's practice . . . may not exceed the scope of practice of the supervising physician." According to § Med 8.08 (1), "A physician assistant may not prescribe or dispense any drug independently." Further, § Med 8.09 states:

> No physician assistant may be self-employed. If the employer of a physician assistant is other than a licensed physician, the employer shall provide for, and may not interfere with, the supervisory responsibilities of the physician, as defined in s. Med 8.02(6) and required in ss. Med 8.07(1) and 8.10.[10]

---

[10] WISCONSIN ADMIN. CODE § Med 8.02(6) (Dec. 1999), states: " 'Supervision' means to coordinate, direct, and inspect the accomplishments of another, or to oversee with powers of direction and decision the implementation of one's own or another's intentions." WISCONSIN ADMIN. CODE § Med 8.10(3) requires that "[t]he supervising physician . . . shall be available to the physician assistant at all times for consultation either in person or within 15 minutes of contact by telephone or by 2–way radio . . . ."

██

¶ 20. Given Pearson's testimony and the supervisory relationship required by the administrative code, there is evidence that would permit a jury to conclude she was acting under Wikenheiser's control and supervision or that Wikenheiser had the right to control her actions. This is especially true since the facts and inferences must be viewed in Petzel's favor as the nonmoving party. The court therefore erred when granting summary judgment based simply on the fact Wikenheiser was not Pearson's employer.

BORROWED SERVANT

██ ██

¶ 21. The borrowed servant rule is another theory of vicarious liability. Under the rule, the borrowing master, not the loaning master, is liable for the negligent acts of a loaned servant if the loaned servant becomes the servant of the borrowing master. *DePratt v. Sergio*, 102 Wis. 2d 141, 142, 306 N.W.2d 62 (1981).[11] Four questions apply to determine whether the doctrine applies:

(1) Did the employee actually or impliedly consent to work for a special employer?

(2) Whose was the work he [or she] was performing at the time of injury?

---

[11] In rejecting the captain of the ship theory in *Lewis*, the court declined to address the borrowed servant doctrine because the plaintiff had not asserted any argument based on it. *Lewis*, 243 Wis. 2d 648, ¶ 10. The court did observe, however, that it had previously declined to discard the borrowed servant doctrine. *Id.*, ¶ 10 n.4 (citing *DePratt v. Sergio*, 102 Wis. 2d 141, 147, 306 N.W.2d 62 (1981)).

(3) Whose was the right to control the details of the work being performed?

(4) For whose benefit primarily was the work being done?

*Id.* at 143 (citing *Seaman Body Corp. v. Industrial Comm'n*, 204 Wis. 157, 163, 235 N.W. 433 (1931)) (additional citations omitted).

¶ 22. Although the circuit court addressed the borrowed servant doctrine as it applied to the defendant hospital, it did not do so in regard to Wikenheiser. Nonetheless, the court granted summary judgment dismissing all claims against Wikenheiser. Applying the doctrine to the hospital, the court concluded it could not apply because "PA Pearson was supervised by Dr. Wikenheiser for whom a primary benefit was being provided. If PA Pearson was a borrowed servant it was not of the hospital." These statements suggest questions (3) and (4) of the test favor application of the doctrine to Wikenheiser.

¶ 23. Wikenheiser combines questions (2) and (4) and argues they militate against application of the doctrine because Wikenheiser and Pearson were performing surgery jointly for Petzel's benefit. This argument completely misses the mark. The questions ask for which employer/master the work is being performed and is benefitting. The *product* of that work will always be produced for the benefit of the customer. Regarding question (3), Wikenheiser baldly asserts, without citation to the record, that Wikenheiser did not have control over the details of how the work was to be performed. This assertion arguably conflicts with both Pearson's testimony and the supervisory requirements set forth in the administrative code. Finally, as to question (1), Wikenheiser does not present any logical

637

argument. Wikenheiser merely states *he* could not consent to Pearson assisting him because, not being her employer, he could not insist upon her assisting him on any given occasion. This fails to address the issue of *Pearson*'s consent.[12]

¶ 24. Construing the facts and reasonable inferences in Petzel's favor as the nonmoving party, we cannot conclude that, as a matter of law, any of the four questions must be answered contrary to Petzel's interest. Thus, summary judgment cannot be granted dismissing the borrowed servant vicarious liability claim.

*By the Court.*—Judgment reversed and cause remanded.

---

[12] Wikenheiser also argues the use of the terms "employer" and "employee" in the four-question test implies the borrowing master must be the actual employer of the borrowed servant. Of course, if that were the case, then there would be no need for the borrowed servant doctrine. Further, Wikenheiser presents no authority in support of this proposition.