COURT OF APPEALS
DECISION
DATED AND FILED

June 10, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP1633**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022CV6215

**IN COURT OF APPEALS
DISTRICT I**

ESTATE OF LUIS LORENZO, BY SPECIAL ADMINISTRATOR WANDA RODRIGUEZ,

PLAINTIFF-APPELLANT,

V.

MARSHALL PUBLIC SAFETY LLC, ENOCH WILSON, EL REY ENTERPRISES LLP AND EL REY ENTERPRISES II LLC,

DEFENDANTS-RESPONDENTS,

KINSALE INSURANCE COMPANY,

INTERVENOR-DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: WILLIAM SOSNAY, Judge. *Affirmed.*

Before White, C.J., Donald, P.J., and Colón, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM. The Estate of Luis Lorenzo, by special administrator Wanda Rodriguez, appeals from the order granting summary judgment of dismissal of claims against El Rey Enterprises LLP and El Rey Enterprises II LLC (collectively El Rey). The Estate argues that the circuit court erred when it determined, that as a matter of law, El Rey was not vicariously liable for Lorenzo's injuries and death, which were caused by contracted armed security guards, and that the Estate's claim for negligent hiring, training, and supervision was barred because such claims are limited to entities with an employer-employee relationship. It also contended that the circuit court granted summary judgment without addressing its claim for negligent formation of firearm and use-of-force policies. Upon review, we affirm.

## BACKGROUND

¶2    This case arises from the death of Lorenzo on July 9, 2022. The Estate filed a complaint in September 2022 against El Rey, Marshal Public Safety (MPS), Enoch Wilson, and their respective insurance companies. El Rey contracted with MPS to provide security at its properties. Wilson owns and operates MPS.

¶3    In the complaint, the Estate alleged that Lorenzo had an altercation inside the El Rey grocery store on South Cesar Chavez Drive in Milwaukee during which a MPS employee, Anthony Nolden, used pepper spray on Lorenzo. Lorenzo was then shot to death by Wilson in the parking lot of the store. The Estate alleged that El Rey was negligent in hiring MPS, negligent in failing to

train and supervise Wilson and Nolden, and negligent in forming its firearm and use-of-force policies.

¶4 In November 2022, El Rey moved to dismiss the action arguing that it was improperly named as a defendant. El Rey argued that the Estate's claim for negligent hiring, training, and supervision failed to make a claim upon which relief may be granted against El Rey because MPS was an independent contractor, not an employee.

¶5 At the January 2023 hearing on the motion to dismiss, the circuit court concluded that the issue was more properly resolved in a summary judgment motion. The court concluded that limited discovery was needed to understand the critical legal issue of the degree of control El Rey had over MPS.

¶6 In April 2023, El Rey moved for summary judgment asserting that MPS was an independent contractor and not an employee. It argued that the Estate's claim of negligent hiring, training, and supervision only applied to employers of employees, therefore, the claim failed as a matter of law. The Estate opposed the motion arguing that El Rey had vicarious liability because even if Wilson and Nolden were independent contractors, they were acting as El Rey's servants or agents under the law. It further asserted that a claim of negligent hiring, training, and supervision was not limited to employers.

¶7 The circuit court addressed the summary judgment motion at a hearing in July 2023. The court concluded that the Estate's claim for negligent hiring, training, and supervision was the only claim pled in the complaint, and that vicarious liability was not pled. The court concluded that the negligent supervision claim failed as a matter of law because it only applied to employer-employee relationships, which was not the relationship between El Rey and MPS.

The court clarified that the record did not reflect the degree of control necessary to show vicarious liability. The court concluded that there were no genuine issues of material fact precluding summary judgment and that El Rey was entitled to judgment. The court's written order dismissed all claims against El Rey on the merits with prejudice.[1] The Estate now appeals.

## DISCUSSION

¶8 The Estate makes three arguments in this appeal. First, the Estate argues that it was not required to plead vicarious liability by name in its complaint because it was a legal theory. However, it contends that the facts in the complaint support an action on the basis of vicarious liability, even if the word vicarious was never used. Second, the Estate argues that the circuit court erred as a matter of law when it concluded that negligent hiring, training, and supervision required an employer-employee relationship. Third, the Estate argues that the circuit court dismissed all claims against El Rey without addressing the Estate's claim that El Rey was negligent in forming its firearm and use-of-force policies. We reject these arguments and affirm.

¶9 To resolve this case, we must determine whether the circuit court properly granted summary judgment in favor of El Rey. When we review a grant

---

[1] For the sake of completeness, we note that in December 2022, MPS and Wilson filed a counterclaim asserting an affirmative defense that Wilson and Nolden were "acting in self-defense when they attempted to detain Luis Lorenzo, and Enoch Wilson only shot Luis Lorenzo after Luis Lorenzo had shot and killed Anthony Nolden and had shot and attempted to kill Enoch Wilson." In April 2023, the Milwaukee County District Attorney's office issued a statement that it was not charging Wilson after concluding that his conduct fell within the privilege of self-defense. In August 2023, MPS's insurance carrier was granted its motion to bifurcate and hold a separate trial on the issue of liability by the Estate/Lorenzo and the issue of whether the insurance policy provided coverage to MPS or Wilson. We discuss further these facts only to the extent it is relevant to the claims against El Rey.

of summary judgment, we employ the same process as the circuit court. ***Central Corp. v. Research Prods. Corp.***, 2004 WI 76, ¶18, 272 Wis. 2d 561, 681 N.W.2d 178. First, we determine whether the plaintiff has stated a claim upon which relief may be granted. ***L.L.N. v. Clauder***, 209 Wis. 2d 674, 682, 563 N.W.2d 434 (1997). If the plaintiff does not state a claim, then the analysis goes no further. *See* ***Hoida, Inc. v. M & I Midstate Bank***, 2006 WI 69, ¶16, 291 Wis. 2d 283, 717 N.W.2d 17.

¶10    "If the pleadings state a claim and demonstrate the existence of factual issues, a court next considers the moving party's affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment[.]" ***L.L.N.***, 209 Wis. 2d at 683. "If a moving party has established a *prima facie* case, the opposing party must then establish that there are disputed material facts, or undisputed material facts from which reasonable alternative inferences could be drawn, that entitle such a party to a trial." ***Baumeister v. Automated Prods., Inc.***, 2004 WI 148, ¶12, 277 Wis. 2d 21, 690 N.W.2d 1.

¶11    "When deciding whether there are genuine issues of material fact, we view the evidence, and the reasonable inferences from that evidence, in a light most favorable to the nonmoving party." ***Petzel v. Valley Orthopedics Ltd.***, 2009 WI App 106, ¶5, 320 Wis. 2d 621, 770 N.W.2d 787. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." WIS. STAT. § 802.08(2) (2023-24).[2]

---

[2] All references to the Wisconsin Statutes are to the 2023-24 version.

### I.    *Vicarious liability*

¶12    We begin with the argument that the Estate did not plead a claim based on vicarious liability in its complaint.  A cause of action need not be named in order to be successfully pled.  "[A] cause of action is not constituted by labeling the operative facts with the name of a legal theory.  The operative facts themselves … constitute the cause of action."  *Strid v. Converse*, 111 Wis. 2d 418, 423, 331 N.W.2d 350 (1983) (quoting *Jost v. Dairyland Power Coop.*, 45 Wis. 2d 164, 169-70, 172 N.W.2d 647 (1969)).  Therefore, this court assesses whether the operative facts pled by the Estate constitute a valid claim based on vicarious liability.

¶13    "Vicarious liability is imputed liability … imposed upon an innocent party for the torts of another because the nature of the agency relationship— specifically the element of control or right of control—justifies it."  *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶21, 273 Wis. 2d 106, 682 N.W.2d 328.  As a general rule, a master will not be liable for a servant's torts, regardless of whether that servant is paid or under formal contract, unless the torts were "committed within the scope of the servant's employment."  *Id.*, ¶¶22-23.

¶14    El Rey argues that MPS was an independent contractor, not its servant, therefore, it cannot be vicariously liable for MPS's torts.  El Rey asserts that under a legal theory of vicarious liability based on *respondeat superior*, independent contractor status is controlling.  "A prerequisite to vicarious liability under *respondeat superior* is the existence of a master/servant relationship."  *Id.*, ¶18.  "The right to control is the dominant test in determining whether an individual is a servant."  *Pamperin v. Trinity Mem'l Hosp.*, 144 Wis. 2d 188, 199, 423 N.W.2d 848 (1988).  The factors for this analysis include "the nature of the business or occupation, which party furnishes the instrumentalities or tools, the

intent of the parties to the contract, and the right of summary discharge of employees." *See* *id.* Our examination of the pleadings do not support that the Estate established facts showing a master/servant relationship between El Rey and MPS. While the Estate alleged El Rey controlled MPS, the complaint does not support that MPS was El Rey's "servant" for the liability determination.

¶15 In support of this claim, the Estate argues that evidentiary facts support El Rey's control over MPS, based on El Rey controlling MPS's access to the building, limiting patrol to El Rey's property, and setting business policies such as not allowing bags in the store. However, the Estate did not include those allegations in the complaint. The first step of the summary judgment analysis is the same as sufficiency of the claim in a motion to dismiss. *See* ***Hoida, Inc.***, 291 Wis. 2d 283, ¶16. "[A] court cannot add facts in the process of construing a complaint." ***Data Key Partners v. Permira Advisers LLC***, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693.

¶16 Even our most liberal construction of the complaint does not allege facts showing the control necessary to allege a master/servant relationship. Because the first step of the summary judgment analysis is to determine the sufficiency of the claim, here, the Estate's claim fails for not stating a claim for vicarious liability upon which relief may be granted. WIS. STAT. § 802.06(2)(a)6;

*Data Key Partners*, 356 Wis. 2d 665, ¶19. Therefore, the Estate's first argument fails.[3]

## II.    *Negligent hiring, training, and supervision*

¶17    Next, the Estate argues that the circuit court erred when it determined, as a matter of law, that its claim for negligent hiring, training, and supervision (hereinafter negligent supervision) failed because MPS was an independent contractor and not an employee of El Rey.[4]  The Estate argues that a negligent supervision tort is not restricted to employers of employees, and could apply here.  El Rey argues that the tort of negligent supervision is restricted to an

---

[3] We note that the Estate at times conflates vicarious liability under *respondeat superior* and vicarious liability for independent contractors; however, we conclude that the Estate has not pled facts to make a claim for vicarious liability for independent contractors.  Although the general rule holds that "one who contracts for the services of an independent contractor is not liable to others for the acts of the independent contractor," *Lofy v. Joint Sch. Dist. No. 2, City of Cumberland*, 42 Wis. 2d 253, 263, 166 N.W.2d 809 (1969), "an employer of an independent contractor is vicariously liable for the tortious conduct of the independent contractor" during two situations: "if the duty cannot be delegated to the independent contractor" and "if the activity of the independent contractor is inherently dangerous." *Brooks v. Hayes*, 133 Wis. 2d 228, 233-34, 395 N.W.2d 167 (1986).  In the complaint, the Estate alleged that El Rey had a duty of care to patrons, but did not identify a non-delegable duty that El Rey improperly delegated to MPS.  The Estate also did not allege facts that show that MPS's private security activity was inherently dangerous.  Although Wisconsin has not addressed whether armed security meets the inherently dangerous exception, other jurisdictions have generally not considered it so because the risks are foreseeable and precautions can be taken. *See Schreiber v. Camm*, 848 F. Supp. 1170, 1178 (D.N.J. 1994) (concluding armed security guards are not an inherently or abnormally dangerous activity, without additional knowledge of dangerous propensities); *Ross v. Texas One P'ship*, 796 S.W.2d 206, 215 (Tex. App. 1990) (concluding armed security work was not inherently dangerous); *but see Villareal v. Zarate*, No. CV 08-002 JH/CEG, 2009 WL 10696449, at *5 (D.N.M. Feb. 13, 2009) (concluding that providing nighttime armed security at an establishment with gambling and alcohol consumption were taking place was an inherently dangerous activity).

[4] We note that the Estate's complaint distinguishes that El Rey was negligent in hiring MPS, as well as negligent in failing to train and supervise Wilson and Nolden.  For the purposes of this analysis, we consider the operative facts in total and there is no need to differentiate the analysis among hiring, training, and supervision.  We therefore refer to the claim as negligent supervision for ease of reading.

employer-employee relationship and that El Rey and MPS did not have that relationship.

¶18 We begin with the law. In *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 580 N.W.2d 233 (1998), our supreme court formally recognized the tort of negligent supervision. Negligent supervision is a tort that arose from the elements of common law negligence. *Id.* at 259-61. To state a claim for negligent supervision, the plaintiff must show: "that the employer has a duty of care, that the employer breached that duty, that the act or omission of the employee was a cause-in-fact of the plaintiff's injury, and that the act or omission of the employer was a cause-in-fact of the wrongful act of the employee." *Id.* at 267-68.

¶19 A key analysis within negligent supervision is the issue of causation, which must establish "a nexus between the negligent hiring, training, or supervision and the act of the employee." *Id.* at 262. Causation is analyzed under two questions: "The first is whether the wrongful act of the employee was a cause-in-fact of the plaintiff's injury. The second question is whether the negligence of the employer was a cause-in-fact of the wrongful act of the employee." *Id.*

¶20 El Rey argues that an employer-employee relationship between El Rey and MPS, Wilson, or Nolden has not been established, which means that *Miller* is inapplicable and a negligent supervision claim fails. The circuit court identified the Estate's concession that Wilson and Nolden were not employees of El Rey as fatal to its claim for negligent supervision. It concluded that without a "wrongful act of *the employee*," the Estate could not establish that an employee caused Lorenzo's injury or that El Rey's negligence caused the wrongful act. *See id.* (emphasis added). El Rey asserts that *Miller*'s analysis of negligent supervision arises from an employer and employee having the same relationship as

a master and servant in common law. *See id.* at 265 (holding that "hiring, training and supervision of employees is exclusively within the employer's control").

¶21    The Estate argues that an agency relationship, as opposed to employee status, could support holding an employer liable for its supervision of an independent contractor. It relies upon two cases to support its position: *A. E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 214 N.W.2d 764 (1974), and *Laesch v. L & H Indus., Ltd.*, 161 Wis. 2d 887, 469 N.W.2d 655 (Ct. App. 1991) *superseded by statute as stated in* *Verdoljak v. Mosinee Paper Corp.*, 192 Wis. 2d 235, 531 N.W.2d 341 (Ct. App. 1995). We disagree that either case supports a general application of the negligent supervision tort to independent contractors or applying that tort to the facts here.

¶22    The facts of *A. E. Investment* and *Laesch* are not analogous. Here, the Estate seeks to hold liable the employer, El Rey, for negligent supervision of its independent contractor, MPS. By contrast in *A. E. Investment*, the tenant of a building sought to hold liable an independent contractor (an architect) of a construction company for the architect's failure to adequately design for the foreseeable conditions of the building site. *Id.*, 62 Wis. 2d at 488-89. A parallel factual scenario to this case would be the Estate attempting to hold MPS liable for foreseeable risk. *See id.* at 485. In *Laesch*, the plaintiff wanted to hold a property owner liable for negligent supervision of an independent contractor it hired to remove material from the property in a trespassing case; however, this claim was only listed in the decision and was not the basis of the holding. *Id.*, 161 Wis. 2d at 891-92, 900. We do not discern legal holdings relevant to the facts before us.

¶23    Even if we were to assume, without deciding, that an agency relationship could support the application of negligent supervision, the Estate's

10

claim fails.[5] The Estate has failed to raise a genuine issue of material fact that El Rey had sufficient control over MPS to prove causation. *Miller*, 219 Wis. 2d at 262. In Wilson's deposition, as president of MPS, he testified that MPS trained its employees in security in accordance with internal policies and industry norms and that El Rey did not train or direct MPS to train the guards in any particular manner. Wilson stated that El Rey had no input on hiring guards and that MPS retained the final decision on firing employees. The deposition testimony of Ernesto Villarreal, the CEO and president of El Rey Holdings, stated that he relied upon MPS to make sure the security guards were hired and trained at industry standards. His testimony established that El Rey did not take direct action over the security services and that the contract dictated the two entities' relationship.

¶24 Although the Estate argues that MPS's dependence on El Rey staff to open the door for MPS employees and El Rey's right to cancel the security contract showed El Rey's control over MPS, those facts do not establish agency, much less establish El Rey's negligence in supervising MPS.

¶25 We conclude that the Estate's claim for negligent supervision fails on multiple grounds. MPS was El Rey's independent contractor, not its employee, servant or agent within the negligent supervision analysis. *Id.* at 265. Further, assuming without deciding that employment status was not controlling, the Estate has not shown that El Rey's negligence was the cause-in-fact of Lorenzo's injuries

---

[5] Here, we acknowledge that the federal district court addressed negligent supervision of independent contractors. *Chapman ex rel. Chapman v. Mutual Serv. Cas. Ins. Co.*, 35 F. Supp. 2d 699 (E.D. Wis. 1999). That court allowed a claim of negligent supervision of an independent contractor to survive based on an employer's liability for negligence based on foreseeable risk and an employer's liability for an independent contractor's torts arising out of non-delegable duties. *Id.* at 706-07.

and death. *See id.* at 262. Therefore, it has not raised a genuine issue of material fact with regard to causation that would preclude summary judgment. ***Petzel***, 320 Wis. 2d 621, ¶5.

### III. *Negligent formation of firearm and use-of-force policies*

¶26 The Estate's final argument is that the circuit court erred when it did not address its claim against El Rey for negligent formation of firearm and use-of-force policies. El Rey argues that the negligent formation claim is indistinguishable from the negligent supervision claim. We discussed above why the negligent supervision claim failed and we agree that those same conclusions apply here.

¶27 El Rey also argues that the Estate abandoned this claim by failing to refute El Rey's arguments and evidence presented in the summary judgment motion. In El Rey's summary judgment motion, it stated it was "uncertain what this allegation refers to as El Rey did not have a 'use of force' policy," and cited to Villarreal's affidavit that El Rey does not have a "use of force policy" for the store. The Estate did not provide evidentiary facts to refute El Rey's evidence that there was not a policy or even that El Rey's policies were negligently formed. *See **Baumeister***, 277 Wis. 2d 21, ¶12. Instead, the Estate relied upon the Wisconsin Administrative Code's requirement that security agencies have a "firearms policy." *See* WIS. ADMIN. CODE § SPS 34.05. Although the Estate inferred that the code provision meant that a security agency had to provide copies of the law on self-defense and retail theft to firearms carrying employees, it did not provide

legal authority for this proposition.[6] Further, the Estate did not establish facts showing that MPS, Wilson, or Nolden were El Rey's employees or El Rey was running a security agency, such that the administrative code would apply to it.

¶28 The Estate's argument on appeal is that negligence was alleged; however, more than bare allegations are necessary. To successfully oppose summary judgment, the non-moving party must produce evidentiary facts that demonstrate a genuine issue of material fact requiring trial. WIS. STAT. § 802.08(2). Based upon our examination of the record, we conclude that the Estate failed to show that a separate claim for negligent formation of firearms and use-of-force policies was developed with evidentiary facts at the summary judgment hearing. The Estate did not present this claim to the circuit court with argument or evidence supporting the allegations or respond to the evidence El Rey presented in its summary judgment motion. Therefore, whether the circuit court dismissed this claim as part of the negligent supervision claim or dismissed it *sub silentio*, we affirm the circuit court's order.

## CONCLUSION

¶29 For the reasons stated above, we affirm the circuit court's order granting judgment in El Rey's favor and dismissing the Estate's action.

*By the Court.*—Order affirmed.

---

[6] We note that WIS. ADMIN. CODE § SPS 34.03 provides that the initial training requirements for carrying a firearm include training "the legal use of firearms under the provisions of the Wisconsin criminal code and relevant court decisions"; "ethical and moral considerations"; and reviewing the law on "lawful detentions" and "criminal and civil liability for intentional and negligent acts." However, that training is not referenced in the firearms policy provision and it does not specify any legal provisions over retail theft or self-defense.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.